# ARIZONA *v.* RUMSEY

No. 83–226.   Argued April 23, 1984—Decided May 29, 1984

*William J. Schafer III* argued the cause for petitioner. With him on the brief was *Robert K. Corbin,* Attorney General of Arizona.

*James R. Rummage,* by appointment of the Court, 465 U. S. 1019, argued the cause and filed a brief for respondent.*

---

*Timothy K. Ford, Jack Greenberg, James M. Nabrit III,* and *Anthony G. Amsterdam* filed a brief for the NAACP Legal Defense and Educational Fund, Inc., as *amicus curiae* urging affirmance.

JUSTICE O'CONNOR delivered the opinion of the Court.

The question presented is whether the Double Jeopardy Clause prohibits the State of Arizona from sentencing respondent to death after the life sentence he had initially received was set aside on appeal. We agree with the Supreme Court of Arizona that *Bullington* v. *Missouri*, 451 U. S. 430 (1981), squarely controls the disposition of this case. Under the interpretation of the Double Jeopardy Clause adopted in that decision, imposition of the death penalty on respondent would be unconstitutional.

I

An Arizona jury convicted respondent of armed robbery and first degree murder. The trial judge, with no jury, then conducted a separate sentencing hearing to determine, according to the statutory scheme for considering aggravating and mitigating circumstances, Ariz. Rev. Stat. Ann. § 13–703 (Supp. 1983–1984), whether death was the appropriate sentence for the murder conviction. Petitioner, relying entirely on the evidence presented at trial, argued that three statutory aggravating circumstances were present. Respondent, presenting only one witness, countered that no aggravating circumstances were present but that several mitigating circumstances were. One of the principal points of contention concerned the scope of Ariz. Rev. Stat. Ann. § 13–703(F)(5) (Supp. 1983–1984), which defines as an aggravating circumstance the murder's commission "as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value." Respondent argued that this provision applies only to murders for hire, whereas petitioner argued that it applies to all murders committed in order to obtain money.

Several days after the sentencing hearing, the trial judge, who imposes sentence without the assistance of a jury under the Arizona scheme, returned a "special verdict" setting forth his findings on each of the statutory aggravating and mitigating circumstances. The judge found that no aggravating or mitigating circumstances were present. App. 53–58. In

particular, with respect to the aggravating circumstance defined in § 13–703(F)(5), the trial judge found:

"5. The defendant did not commit the offense as consideration for the receipt or in expectation of the receipt of anything of pecuniary value.

"In this regard, the Court does not agree with the State's interpretation of A. R. S. 13–703(F)(5) and *State v. Madsen* filed March 26, 1980. The Court believes that when A. R. S. 13–703(F)(4) and (5) are read together that they are intended to apply to a contract-type killing situation and not to a robbery, burglary, etc." App. 54–55.

Having found no aggravating circumstances, the trial court was statutorily barred from sentencing respondent to death. Ariz. Rev. Stat. Ann. § 13–703(E) (Supp. 1983–1984); App. to Pet. for Cert. A–3. The court accordingly sentenced respondent to life imprisonment without possibility of parole for 25 years, the sentence statutorily mandated for first degree murder when the death penalty is not imposed. Ariz. Rev. Stat. Ann. § 13–703(A) (Supp. 1983–1984). With respect to the armed robbery conviction, the court found that respondent had committed a "dangerous offense" involving use of a deadly weapon and that there was an aggravating circumstance not outweighed by any mitigating circumstance—respondent had "planned this robbery . . . in order to obtain what [he] knew was only a few hundred dollars . . . ." App. 66. As authorized by Arizona law, Ariz. Rev. Stat. Ann. §§ 13–604 and 13–702 (1978 and Supp. 1983–1984), the court accordingly sentenced respondent to 21 years' imprisonment for armed robbery. The prison terms for the two convictions were to run consecutively.

Respondent appealed the judgment to the Supreme Court of Arizona, arguing that imposition of consecutive sentences in his case violated both federal and state law. Under Arizona law, Ariz. Rev. Stat. Ann. § 13–4032(4) (1978), respondent's appeal permitted petitioner to file a cross-appeal from

the life sentence; in that cross-appeal petitioner contended that the trial court had committed an error of law in interpreting the pecuniary gain aggravating circumstance to apply only to contract killings. The State Supreme Court rejected respondent's challenge to his sentence. It agreed with petitioner, however, that the trial court had misinterpreted § 13–703(F)(5): "theft committed in the course of a murder" could constitute an aggravating circumstance under that section. 130 Ariz. 427, 431, 636 P. 2d 1209, 1213 (1981). Because of the trial court's misinterpretation, the State Supreme Court concluded, "the sentence of life imprisonment previously imposed will have to be set aside and the matter remanded for redetermination of aggravating and mitigating circumstances and resentencing." *Id.*, at 432, 636 P. 2d, at 1214. The sentence for armed robbery was left undisturbed.

On remand the trial court held a new sentencing hearing. Neither petitioner nor respondent presented any new evidence, although they had the opportunity to do so. The court heard argument, however, both on the lawfulness of imposing the death penalty on resentencing and on the presence of aggravating and mitigating circumstances.

Petitioner argued that neither federal nor state law barred sentencing respondent to death. Petitioner also urged the court to find the three statutory aggravating circumstances identified at the first sentencing, largely repeating the arguments it had made at the first proceeding. App. 78–94. Respondent argued that imposing the death penalty would violate *Bullington* v. *Missouri*, 451 U. S. 430 (1981), *North Carolina* v. *Pearce*, 395 U. S. 711 (1969), and Arizona Rule of Criminal Procedure 26.14, which implements the resentencing principles of the *Pearce* case. With respect to aggravating and mitigating circumstances, respondent effectively conceded the presence of the pecuniary gain aggravating circumstance, thinking the issue foreclosed by a statement in the opinion of the State Supreme Court. See App. 104; 130 Ariz., at 431, 636 P. 2d, at 1213 ("In the instant case, the hope of financial gain was a cause of the murder . . ."). But

respondent contended that this aggravating circumstance was outweighed by a statutory mitigating circumstance not among the five enumerated in the death sentencing statute: according to the testimony of the jury foreperson, the conviction for first degree murder was based on the felony-murder instruction, not on the premeditation instruction; thus, respondent contended, to regard the theft as an aggravating circumstance after using it to elevate second degree murder into first would be a form of double counting. App. 94–108.

Several days after the hearing, the trial court returned a special verdict reciting findings on each of the statutory aggravating and mitigating circumstances and on the one nonstatutory mitigating circumstance urged by respondent. The court found to be present only one of the seven statutory aggravating circumstances, namely, § 13–703(F)(5), concerning commission of the murder for pecuniary gain. The court also found that none of the five statutory mitigating circumstances was present and that the fact that the murder conviction was for felony murder, if a mitigating circumstance at all, was not sufficiently substantial to call for leniency. App. 118–124. Accordingly, as required under Arizona law, Ariz. Rev. Stat. Ann. § 13–703(E) (Supp. 1983–1984), the court sentenced respondent to death.

In his mandatory appeal to the Supreme Court of Arizona, respondent argued that imposition of the death sentence on resentencing, after he had effectively been "acquitted" of death at his initial sentencing, violated the Double Jeopardy Clause of the Fifth Amendment, as applied to the States by the Fourteenth Amendment. *Benton* v. *Maryland,* 395 U. S. 784 (1969). He also argued that the death sentence violated the Due Process Clause of the Fourteenth Amendment, as interpreted in *North Carolina* v. *Pearce, supra.* The Supreme Court of Arizona addressed only the first argument. It concluded that, under this Court's decision in *Bullington* v. *Missouri, supra,* respondent's sentence violated the constitutional prohibition on double jeopardy. 136 Ariz. 166, 665 P. 2d 48 (1983). The court therefore ordered

respondent's sentence for first degree murder reduced to life imprisonment without possibility of parole for 25 years.

The State of Arizona filed a petition for a writ of certiorari. We granted certiorari, 464 U. S. 1038 (1983), and now affirm.

## II

In *Bullington* v. *Missouri* this Court held that the Double Jeopardy Clause applies to Missouri's capital sentencing proceeding and thus bars imposition of the death penalty upon reconviction after an initial conviction, set aside on appeal, has resulted in rejection of the death sentence. The Court identified several characteristics of Missouri's sentencing proceeding that make it comparable to a trial for double jeopardy purposes. The discretion of the sentencer—the jury in Missouri—is restricted to precisely two options: death, and life imprisonment without possibility of release for 50 years. In addition, the sentencer is to make its decision guided by substantive standards and based on evidence introduced in a separate proceeding that formally resembles a trial. Finally, the prosecution has to prove certain statutorily defined facts beyond a reasonable doubt in order to support a sentence of death. 451 U. S., at 438. For these reasons, when the Missouri sentencer imposes a sentence of life imprisonment in a capital sentencing proceeding, it has determined that the prosecution has failed to prove its case. Because the Court believed that the anxiety and ordeal suffered by a defendant in Missouri's capital sentencing proceeding are the equal of those suffered in a trial on the issue of guilt, the Court concluded that the Double Jeopardy Clause prohibits the State from resentencing the defendant to death after the sentencer has in effect acquitted the defendant of that penalty.

The capital sentencing proceeding in Arizona shares the characteristics of the Missouri proceeding that make it resemble a trial for purposes of the Double Jeopardy Clause. The sentencer—the trial judge in Arizona—is required to choose between two options: death, and life imprisonment

without possibility of parole for 25 years. The sentencer must make the decision guided by detailed statutory standards defining aggravating and mitigating circumstances; in particular, death may not be imposed unless at least one aggravating circumstance is found, whereas death must be imposed if there is one aggravating circumstance and no mitigating circumstance sufficiently substantial to call for leniency. The sentencer must make findings with respect to each of the statutory aggravating and mitigating circumstances, and the sentencing hearing involves the submission of evidence and the presentation of argument. The usual rules of evidence govern the admission of evidence of aggravating circumstances, and the State must prove the existence of aggravating circumstances beyond a reasonable doubt. See Ariz. Rev. Stat. Ann. § 13–703 (Supp. 1983–1984); 136 Ariz., at 171–172, 665 P. 2d, at 53–54. As the Supreme Court of Arizona held, these characteristics make the Arizona capital sentencing proceeding indistinguishable for double jeopardy purposes from the capital sentencing proceeding in Missouri. *Id.*, at 171–174, 665 P. 2d, at 53–56.

That the sentencer in Arizona is the trial judge rather than the jury does not render the sentencing proceeding any less like a trial. See *United States* v. *Morrison,* 429 U. S. 1, 3 (1976) (Double Jeopardy Clause treats bench and jury trials alike). Nor does the availability of appellate review, including reweighing of aggravating and mitigating circumstances, make the appellate process part of a single continuing sentencing proceeding. The Supreme Court of Arizona noted that its role is strictly that of an appellate court, not a trial court. Indeed, no appeal need be taken if life imprisonment is imposed, and the appellate reweighing can work only to the defendant's advantage. 136 Ariz., at 173–174, 665 P. 2d, at 55–56. In short, a sentence imposed after a completed Arizona capital sentencing hearing is a judgment like the sentence at issue in *Bullington* v. *Missouri,* which this Court held triggers the protections of the Double Jeopardy Clause.

The double jeopardy principle relevant to respondent's case is the same as that invoked in *Bullington:* an acquittal on the merits by the sole decisionmaker in the proceeding is final and bars retrial on the same charge. Application of the *Bullington* principle renders respondent's death sentence a violation of the Double Jeopardy Clause because respondent's initial sentence of life imprisonment was undoubtedly an acquittal on the merits of the central issue in the proceeding— whether death was the appropriate punishment for respondent's offense. The trial court entered findings denying the existence of each of the seven statutory aggravating circumstances, and as required by state law, the court then entered judgment in respondent's favor on the issue of death. That judgment, based on findings sufficient to establish legal entitlement to the life sentence, amounts to an acquittal on the merits and, as such, bars any retrial of the appropriateness of the death penalty.

In making its findings, the trial court relied on a misconstruction of the statute defining the pecuniary gain aggravating circumstance. Reliance on an error of law, however, does not change the double jeopardy effects of a judgment that amounts to an acquittal on the merits. "[T]he fact that 'the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles' . . . affects the accuracy of that determination, but it does not alter its essential character." *United States* v. *Scott*, 437 U. S. 82, 98 (1978) (quoting *id.*, at 106 (BRENNAN, J., dissenting)). Thus, this Court's cases hold that an acquittal on the merits bars retrial even if based on legal error.

*United States* v. *Wilson*, 420 U. S. 332 (1975), held that the prosecution could appeal from a judgment of acquittal entered by the trial judge after the jury had returned a verdict of guilty. But that holding has no application to this case. No double jeopardy problem was presented in *Wilson* because the appellate court, upon reviewing asserted legal er-

rors of the trial judge, could simply order the jury's guilty verdict reinstated; no new factfinding would be necessary, and the defendant therefore would not be twice placed in jeopardy. By contrast, in respondent's initial capital sentencing, there was only one decisionmaker and only one set of findings of fact, all favorable to respondent. The trial court "acquitted" respondent of the death penalty, and there was no verdict of "guilty" for the appellate court to reinstate. The Supreme Court of Arizona accordingly "remanded for redetermination of aggravating and mitigating circumstances and resentencing," 130 Ariz., at 432, 636 P. 2d, at 1214—that is, for a second sentencing proceeding similar to the first. Whereas the defendant in *Wilson* was not to be subjected to a second trial after an acquittal at his first, that is precisely what has happened to respondent.

### III

*Bullington* v. *Missouri* held that double jeopardy protections attach to Missouri's capital sentencing proceeding because that proceeding is like a trial. The capital sentencing proceeding in Arizona is indistinguishable for double jeopardy purposes from the proceeding in Missouri. Under *Bullington*, therefore, respondent's initial sentence of life imprisonment constitutes an acquittal of the death penalty, and the State of Arizona cannot now sentence respondent to death on his conviction for first degree murder.

Petitioner has invited the Court to overrule *Bullington*, decided only three years ago. We decline the invitation. Although adherence to precedent is not rigidly required in constitutional cases, any departure from the doctrine of *stare decisis* demands special justification. See, *e. g.*, *Swift & Co.* v. *Wickham*, 382 U. S. 111, 116 (1965); *Smith* v. *Allwright*, 321 U. S. 649, 665 (1944). Petitioner has suggested no reason sufficient to warrant our taking the exceptional action of overruling *Bullington*.

The judgment of the Supreme Court of Arizona is therefore

*Affirmed.*

JUSTICE REHNQUIST, with whom JUSTICE WHITE joins, dissenting.

Today the Court affirms the decision of the Arizona Supreme Court vacating the death sentence imposed on respondent for a murder committed in the course of an armed robbery. Applying the interpretation given the Double Jeopardy Clause by a bare majority of this Court in *Bullington* v. *Missouri*, 451 U. S. 430 (1981), the Court concludes that in this case the first sentencing also amounted to an implied acquittal of respondent's eligibility for the death penalty. I continue to believe that *Bullington* was wrongly decided for the reasons expressed in JUSTICE POWELL's dissent in that case. But even apart from those views, I do not believe that the reasoning underlying *Bullington* applies to this remand for resentencing to correct a legal error. Accordingly, I dissent.

The central premise of the Court's holding today is that the trial court's first finding—that there were no aggravating and no mitigating circumstances and therefore only a life sentence could be imposed—amounted to an "implied acquittal" on the merits of respondent's eligibility for the death sentence, thereby barring the possibility of an enhanced sentence upon resentencing by virtue of the Double Jeopardy Clause. But the Court's continued reliance on the "implied acquittal" rationale of *Bullington* is simply inapt. Unlike the jury's decision in *Bullington*, where the jury had broad discretion to decide whether capital punishment was appropriate, the trial judge's discretion in this case was carefully confined and directed to determining whether certain specified aggravating factors existed. Compare Mo. Rev. Stat. § 565.008 (1979) with Ariz. Rev. Stat. Ann. § 13–703(E)

(Supp. 1983–1984). It is obvious from the record that the State established at the first hearing that respondent murdered his victim in the course of an armed robbery, a fact which was undisputed at sentencing. In no sense can it be meaningfully argued that the State failed to "prove" its case—the existence of at least one aggravating circumstance. It is hard to see how there has been an "implied acquittal" of a statutory aggravating circumstance when the record explicitly establishes the factual basis that such an aggravating circumstance existed. But for the trial judge's erroneous construction of governing state law, the judge would have been required to impose the death penalty.

If, as a matter of state law, the Arizona Supreme Court had simply corrected the erroneous sentence itself without remanding, there could be no argument that *Bullington* would prevent the imposition of the death sentence. That much was made clear in our decision in *United States* v. *Wilson*, 420 U. S. 332 (1975). After stating the well-settled rule that an appellate court's order reversing a conviction is subject to further review without subjecting a defendant to double jeopardy, we wrote:

> "It is difficult to see why the rule should be any different simply because the defendant has gotten a favorable postverdict ruling of law from the District Judge rather than from the Court of Appeals, or because the District Judge has relied to some degree on evidence presented at trial in making his ruling. Although review of any ruling of law discharging a defendant obviously enhances the likelihood of conviction and subjects him to continuing expense and anxiety, a defendant has no legitimate claim to benefit from an error of law when that error could be corrected without subjecting him to a second trial before a second trier of fact." *Id.*, at 345.

The fact that in this case the legal error was ultimately corrected by the trial court did not mean that the State sought to marshal the same or additional evidence against a

capital defendant which had proved insufficient to prove the State's "case" against him the first time.   There is no logical reason for a different result here simply because the Arizona Supreme Court remanded the case to the trial court for the purpose of correcting the legal error, particularly when the resentencing did not constitute the kind of "retrial" which the *Bullington* Court condemned.   Accordingly, I would reverse the decision of the Arizona Supreme Court in this case.