Kaye, J.
(dissenting). Under Bullington v Missouri (451 US 430) and Arizona v Rumsey (467 US 203, 104 S Ct 2305), the determination of whether the double jeopardy clause applies to a sentencing proceeding turns on the extent to which the proceeding resembles a trial. The majority complicates this clearly *238 defined test by adding to it an analysis of whether the factors considered at sentencing relate to the principal offense. It then examines the persistent felony offender statute, emphasizing the areas where the procedure differs from a trial but disregarding the significant similarities between the two. In my view, the procedure established for sentencing a defendant as a persistent felon bears sufficient resemblance to a trial to subject it to the constraints of the double jeopardy clause, and I therefore respectfully dissent.
As recognized by the majority, the double jeopardy clause is normally inapplicable to sentencing proceedings because the imposition of sentence is not usually regarded as an acquittal of a more severe sentence (Bullington v Missouri, 451 US 430, 438, supra; see also, North Carolina v Pearce, 395 US 711). Under the traditional sentencing proceeding, involving unbounded discretion of the sentencer, one could not consider a sentence less than the maximum as an indication that the prosecutor had failed to prove its case (Bullington v Missouri, supra, at p 443). However, in Bullington, the Supreme Court held that the double jeopardy clause applied to Missouri’s capital sentencing scheme. Under Missouri law, where the defendant is found guilty of capital murder, the trial court conducts a separate hearing to determine whether to impose a sentence of death or life imprisonment. Before the death penalty may be imposed, the jury must consider aggravating and mitigating circumstances and must find beyond a reasonable doubt that aggravating circumstances warrant capital punishment. However, the jury has discretion to sentence the defendant to life imprisonment even if it finds the evidence of aggravating circumstances sufficient. The court stressed the similarity of this proceeding to a trial: “The jury in this case was not given unbounded discretion to select an appropriate punishment from a wide range authorized by statute. Rather, a separate hearing was required and was held, and the jury was presented both a choice between two alternatives and standards to guide the making of that choice. Nor did the prosecution simply recommend what it felt to be an appropriate punishment. It undertook the burden of establishing certain facts beyond a reasonable doubt in its quest to obtain the harsher of the two alternative verdicts. The presentence hearing resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence. It was itself a trial on the issue of punishment”. {Id., at p 438.)
In Bullington the court distinguished prior cases where the double jeopardy clause was held not to apply to sentencing *239 because the procedures in those cases “did not have the hallmarks of the trial on guilt or innocence” (id., at p 439). Unlike the traditional sentencing procedure, Missouri’s capital sentencing scheme did require the sentencer to determine whether the prosecution had proved its case and thus was subject to the double jeopardy clause.
The determinative question, therefore, is whether the sentencing proceeding resembles a trial. This rationale was confirmed in Arizona v Rumsey (467 US 203, 104 S Ct 2305, 2311, supra) where the court pointedly stated, “Bullington v. Missouri held that double jeopardy protections attach to Missouri’s capital sentencing proceeding because that proceeding is like a trial.” In Rumsey, the court found the second capital sentencing proceeding barred by the double jeopardy clause because the Arizona scheme “shares the characteristics of the Missouri proceeding that make it resemble a trial for purposes of the Double Jeopardy Clause” (id., at p 2310).
The majority obscures this rationale by stating the question as whether the factors at issue at the sentencing proceeding are related to the substantive offense. On this basis, the court distinguishes Bullington. It notes that of the 10 aggravating circumstances and 7 mitigating circumstances set out in the Missouri statute to be considered at the penalty proceeding, 9 aggravating circumstances and 6 mitigating circumstances concern the manner in which the underlying crime was committed. The issues at the persistent felony offender hearing in this case, argues the majority, are unrelated to the predicate offense.
The majority’s reasoning is supported neither by the articulated basis of Bullington nor by its facts. Bullington held that double jeopardy attaches to a sentencing proceeding which resembles a trial. The court did not rely on the relationship of aggravating and mitigating circumstances to the manner in which the underlying crime was committed. Indeed, at the sentencing proceeding in Bullington, the defense offered no evidence in mitigation and the prosecutor relied on only two aggravating circumstances, “that ‘[t]he offense was committed by a person * * * who has a substantial history of serious assaultive criminal convictions,’ * * * and that ‘[t]he offense was outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind’ ” (Bullington v Missouri, supra, at p 435). Only the latter relates to the offense. The former concerned the defendant’s prior record, the precise type of issue presented here, and has no relation to the principal offense. Thus, the issues at the sentencing hearing in Bullington were not as tied to the substantive offense as the majority suggests.
*240 The failure of the Supreme Court to rest its decision on the grounds advanced by the majority is hardly surprising. The double jeopardy clause protects a defendant from multiple exposure to the embarrassment, expense, ordeal, anxiety and insecurity associated with a trial-like procedure. It avoids the unacceptably high risk that the prosecution, with its superior resources, would wear down the defendant, thereby leading to an erroneously imposed sentence (id., at p 445). These interests are not diminished because the facts to be proven at the sentencing hearing relate to the number of years defendant will spend in prison rather than the crime itself.
Thus, the question on this appeal is whether New York’s persistent felony offender procedure resembles a trial to the extent that a fact finder is required to determine whether the People have proved their case.
In essence, a persistent felony offender is a person who stands convicted of a felony after having previously been convicted of two or more felonies (Penal Law § 70.10 [1]). A person adjudicated a persistent felony offender is sentenced as if he had been convicted of a class A-l felony (Penal Law § 70.10 [2]). The procedure for imposing this enhanced sentence is governed by CPL 400.20.
When circumstances indicate that a persistent felony offender sentence may be warranted, the court may order a hearing (CPL 400.20 [2]). The court must annex to this order a statement specifying the dates and places of the previous convictions and the factors in the defendant’s background which the court considers relevant for sentencing (CPL 400.20 [3]). The defendant is provided with a copy of the statement in advance of the hearing (CPL 400.20 [4]).
At the hearing, the People have the burden of establishing the two components of a persistent felony offender adjudication. First, the prosecution must prove that defendant is a persistent felony offender as defined in Penal Law § 70.10 by “proof beyond a reasonable doubt by evidence admissible under the rules applicable to the trial of the issue of guilt” (CPL 400.20 [5]). Second, the People must prove by a preponderance of the evidence that “the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest” (CPL 400.20 [1], [5]). Matters concerning the defendant’s history and character and the nature of his criminal conduct may be established by any nonprivileged relevant evidence (CPL 400.20 [5]).
*241 When the hearing concludes, the court must make a finding, based on evidence in the record of the hearing, as to whether the defendant is a persistent felony offender. In the event the defendant is found, beyond a reasonable doubt, to be a persistent felony offender, the court must máke such findings as it deems relevant to the question of whether a persistent felony offender sentence is warranted (CPL 400.20 [9]). The court is permitted, however, to terminate the hearing in its discretion without making findings, in which case the defendant may not be sentenced as a persistent felony offender (CPL 400.20 [10]).
While there are concededly differences, this proceeding on the whole bears a marked similarity to a trial on the issue of guilt or innocence. The purpose of the hearing is to provide the court with the opportunity to choose between two options — whether or not to sentence the defendant as a persistent felony offender. The court has no discretion in determining whether the defendant is a persistent felony offender. The discretion as to the history and character of the defendant is not dissimilar to that exercised by the sentencer in Bullington v Missouri (supra, at pp 434-435) to sentence the defendant to life imprisonment even though aggravating circumstances justify the death penalty. As in Rumsey, the sentencer must make findings and the sentencing hearing involves the submission of evidence and, necessarily, the presentation of argument (Arizona v Rumsey, supra, at p 2310).
As to the standard of proof, the majority conspicuously ignores perhaps the most important aspect of the persistent felony offender sentencing procedure. The court notes, “In a persistent felony offender hearing, for example, the prosecution need only prove by a preponderance of the evidence that a defendant’s history and character and the nature and circumstances of his criminal conduct warrant persistent felon treatment and it is not constrained by the rules of evidence applicable to a trial but may offer any legally relevant evidence”. (Majority opn, at p 235.) However, it fails to mention that the prosecutor must prove the defendant’s commission of the prior felonies beyond a reasonable doubt by evidence admissible at a trial. This failure is especially troublesome since at issue here is the prosecution’s failure to make this very showing. As acknowledged by the Supreme Court in both Bullington and Rumsey, the reasonable doubt standard, the same one required to be used at a trial on the issue of guilt or innocence, is a significant indication that the double jeopardy clause should apply to the sentencing procedure.
*242 Finally, the majority distinguishes Bullington and Rumsey because of the added anxiety and insecurity suffered by a defendant in a capital sentencing proceeding as compared to the habitual offender sentencing proceeding. The ordeal attending the imposition of the death penalty surely cannot be matched, but neither can the anxiety experienced by a defendant at a persistent felony offender proceeding be dismissed as insignificant. The minimum sentence which can be imposed on a persistent felon is a prison term of 15 years to life, and the term can be as much as 25 years to life (Penal Law §§ 70.00, 70.10). A person convicted of the same underlying offense and sentenced as a nonpersistent felon could receive a sentence not involving incarceration. Here, where the underlying crime was a class B felony, the permissible sentence for a nonpersistent felon ranged from 2 to 6 years, to 12Vfe to 25 years (Penal Law §§ 70.00, 70.06). The difference cannot be considered so insignificant as to vitiate double jeopardy protection.
In sum, the persistent felony offender procedure requires the People to prove .beyond a reasonable doubt at a separate hearing that the defendant is a predicate felon. No principled distinction exists between this procedure and those considered in Bulling-ton and Rumsey.
Chief Judge Wachtler and Judges Jasen and Alexander concur with Judge Simons; Judge Kaye dissents and votes to reverse in a separate opinion in which Judge Meyer concurs; Judge Titone taking no part.
Order affirmed.