**CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE UNION (INDEPENDENT) PENSION FUND, Paul L. Glover, et al., Plaintiffs–Appellants,**

v.

**Rose STEINBERG, Defendant–Appellee.**

**No. 93–3432.**

United States Court of Appeals, Seventh Circuit.

Argued May 12, 1994.

Decided Aug. 9, 1994.

---

David S. Allen, Jacobs, Burns, Sugarman, Orlove & Stanton, Chicago, IL (argued), for plaintiffs-appellants.

Michael S. Blazer, Martin D. Tasch (argued), Barnett, Bornstein & Blazer, Chicago, IL, for defendant-appellee.

Before ESCHBACH, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund ("the Fund") once again asks us to overrule circuit precedent and hold that an individual may be liable for a sole proprietorship's pension fund withdrawal liability only because she is married to the sole proprietor.[1] We refuse to do so, and affirm the district court's dismissal of the Fund's complaint.

## I

Irving Steinberg, husband of defendant Rose Steinberg, owned 90% of the voting stock of Tasemkin Furniture Company, Inc. ("Tasemkin"). In March 1991, Tasemkin ceased contributing to the Fund, an employee pension benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2)(A). The Fund interpreted the cessation to constitute a "complete withdrawal" from the pension plan under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1383(a)(1). It therefore notified Tasemkin of withdrawal liability of $280,842.79. *See* 29 U.S.C. §§ 1382, 1399(b)(1). Tasemkin did not request arbitration, *see* 29 U.S.C. § 1401(a)(1); it had filed for reorganization under Chapter 11, and its case was eventually converted to a Chapter 7 liquidation.

Mr. Steinberg, however, was also the title holder of two pieces of real estate that he had leased—as a sole proprietor—to Tasemkin. These leases rendered his sole proprietorship part of a group under "common control" for purposes of 29 U.S.C. § 1301(b)(1). Under § 1301(b)(1), all trades or businesses under "common control" (i.e., those businesses sharing significant ownership by the same people) are deemed as constituting a single employer for purposes of determining withdrawal liability. Therefore, if one company incurs withdrawal liability, all other companies under "common control" are jointly and severally liable for its withdrawal obligations. "The main purpose of this rule is to prevent a business subject to an unfulfilled pension debt from 'fractionalizing its operations' or shifting assets to related companies to avoid meeting its financial obligations under the plan." *Central States Pension Fund v. Johnson*, 991 F.2d 387, 388 (7th Cir.1993). The MPPAA authorizes the Pension Benefit Guaranty Corporation ("PBGC") to issue regulations defining the scope of a "controlled group"; these regulations "are consistent and coextensive" with certain regulations prescribed by the Secretary of Treasury. 29 C.F.R. § 2612.2. Mr. Steinberg's leasing business and Tasemkin were under common control because five or fewer people owned at least 80% of the stock in each business organization and exercised

1. The appellants, acknowledging our decisions in *Chicago Truck Drivers Pension Fund v. Slotky*, 9 F.3d 1251 (7th Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 1399, 128 L.Ed.2d 72 (1994), and *Central States Pension Fund v. Johnson*, 991 F.2d 387 (7th Cir.1993), filed before oral argument a suggestion for rehearing en banc. No member of the court in active service requested an answer, and the court accordingly entered an order denying rehearing en banc and setting the case for argument before a panel of the court in due course.

effective control over both.[2] As a result, Mr. Steinberg's sole proprietorship leasing business, and hence Mr. Steinberg himself, had to assume Tasemkin's withdrawal liability. The Fund obtained a judgment against Mr. Steinberg in February 1992.

The case before us, however, concerns the Fund's attempt to obtain satisfaction of the withdrawal liability from Mrs. Steinberg as well. On March 26, 1992, the Fund brought this action claiming that Mrs. Steinberg's status as Irving Steinberg's spouse rendered her liable for the obligations of Mr. Steinberg's sole proprietorship—namely, $280,842.79 in withdrawal liability. The Fund relied on 26 C.F.R. § 1.414(c)–4(b)(5), also known as the spousal attribution rule. It is a treasury regulation, applicable to pension fund cases by virtue of the PBGC's regulations, see 29 C.F.R. § 2612.2, that deems each spouse an "owner" of the other's property interests under certain circumstances. The regulation provides that "an individual shall be considered to own an interest owned, directly or indirectly, by or for his or her spouse." The Fund maintained that the rule deems Mrs. Steinberg an "owner" of Mr. Steinberg's sole proprietorship leasing business and therefore jointly and severally liable for its withdrawal liability.

The district court disagreed and granted Mrs. Steinberg's motion to dismiss. The court stated that our decision in *Johnson*, 991 F.2d at 389–90, "squarely rejected" the Fund's argument that the spousal attribution regulation alone rendered Mrs. Steinberg liable for the obligations of her husband's sole proprietorship. 1993 WL 375909 at *2. The district court held that, under *Johnson*, 991 F.2d at 391–94, Mrs. Steinberg could have been liable if the couple had intended to be partners in the leasing business. The Fund's complaint, however, set forth "no allegations whatsoever regarding Mrs. Steinberg's ownership interests or intent to be a partner." 1993 WL 375909 at *4. The district court therefore concluded that the Fund failed to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). The Fund

appeals, and we now review de novo the district court's decision to dismiss the complaint. *See Hondo, Inc. v. Sterling*, 21 F.3d 775, 777 (7th Cir.1994).

## II

In contending that the district court erred in dismissing its complaint, the Fund does not challenge the district court's conclusion that the complaint lacked any allegation concerning Mrs. Steinberg's intent to form a partnership with her husband. Rather, it argues that the district court erred in following our circuit precedent interpreting the spousal attribution rule. The Fund thus submits that *Johnson* and *Chicago Truck Drivers Pension Fund v. Slotky*, 9 F.3d 1251 (7th Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 1399, 128 L.Ed.2d 72 (1994), were wrongly decided and should be overruled.

As the district court pointed out, *Johnson* addressed the same issue the Fund presents in this case—whether "the spousal attribution rule requires us to impute [a husband's] ownership of [an] unincorporated leasing business to [his spouse], and therefore to find her jointly liable for [a] withdrawal obligation." 991 F.2d at 389. We concluded that the spousal attribution rule did not require such a result. The penultimate sentence of 29 U.S.C. § 1301(b)(1) makes clear that, "under regulations prescribed by the [PGBC], all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." As *Johnson* explains, "the treasury regulations come into play only to identify which businesses should be treated as forming a controlled group." *Johnson*, 991 F.2d at 389. They do not determine ownership of a business, but only whether that business falls into a controlled group. *Id.* at 390. *Johnson* also rejected as dictum a statement seemingly to the contrary found in *Central States Pension Fund v. Ditello*, 974 F.2d 887, 891 n. 1 (7th Cir.1992). Later, in *Slotky*, the plaintiff before us in this case challenged *Johnson*

2. *See* 29 C.F.R. § 1.414(c)–2(c)(1) (treasury regulations defining two or more trades or businesses

under common control).

as wrongly decided; again we dismissed as misplaced the Fund's reliance on dictum in *Ditello* and stated that we saw "no need to revisit" our decision in *Johnson. Slotky,* 9 F.3d at 1252.

We once again decline to revisit *Johnson.* We do not take lightly suggestions to overrule circuit precedent. As the Supreme Court has stated, "no judicial system could do society's work if it eyed each issue afresh in every case that raised it." *Planned Parenthood v. Casey,* —— U.S. ——, ——, 112 S.Ct. 2791, 2808, 120 L.Ed.2d 674 (1992) (plurality opinion). This practical necessity is the reason that "the doctrine of *stare decisis* is of fundamental importance to the rule of law"; it "promotes stability, predictability, and respect for judicial authority." *Hilton v. South Carolina Pub. R.R. Comm'n,* 502 U.S. 197, ——, 112 S.Ct. 560, 563–64, 116 L.Ed.2d 560 (1991) (citations omitted). Indeed, "a respect for precedent is, by definition, indispensable" to the rule of law. *Casey,* —— U.S. at ——, 112 S.Ct. at 2808. We therefore shall not disturb precedent absent "special justification." *Arizona v. Rumsey,* 467 U.S. 203, 212, 104 S.Ct. 2305, 2310–11, 81 L.Ed.2d 164 (1984); *see also Hilton,* 502 U.S. at ——, 112 S.Ct. at 564 (stating that "we will not depart from the doctrine of *stare decisis* without some compelling justification").

The Fund has not come close to demonstrating that such a special justification exists in this case. Instead, it merely rehashes its twice-failed attempt to transmute dictum in *Ditello,* 974 F.2d at 891 n. 1, to an authoritative holding. The Fund also claims that, unlike the plaintiff in *Johnson,* it does not contend that the spousal attribution rule creates personal liability for a spouse, but rather simply imputes ownership. This is hardly the case. First, in *Johnson,* 991 F.2d at 389, we did in fact address and reject the argument that the spousal attribution rule requires imputation of ownership, just as we did in *Slotky,* 9 F.3d at 1252. Second, in this case, as in any case in which the business organization at issue is without benefit of limited liability, the Fund's distinction is one without a difference. The Fund's argument shows as much. *See* Appellant's Br. at 2–3 (stating that the spousal attribution rule dic-

tates that "Rose Steinberg must be considered the owner of her husband's sole proprietorship leasing business and, in that capacity, personally liable for the Fund's [withdrawal liability] claim").

Not only has the Fund failed to demonstrate any special justification that warrants departure from *stare decisis,* but there are also two reasons in this case for adhering to our precedent even beyond those reasons generally requiring such a course. First, the Supreme Court has stated that "there is a strong presumption of continued validity that adheres in the judicial interpretation of a statute." *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.,* 476 U.S. 409, 424, 106 S.Ct. 1922, 1930–31, 90 L.Ed.2d 413 (1986); *see also Illinois Brick Co. v. Illinois,* 431 U.S. 720, 736, 97 S.Ct. 2061, 2069–70, 52 L.Ed.2d 707 (1977) (stating that "considerations of *stare decisis* weigh heavily in the area of statutory construction"). Indeed,

> the burden borne by the party advocating abandonment of an established precedent is greater where the Court is asked to overrule a point of statutory construction. Considerations of *stare decisis* have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done.

*Patterson v. McLean Credit Union,* 491 U.S. 164, 172, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989); *see also Hilton,* 502 U.S. at ——, 112 S.Ct. at 564 (same); *Holder v. Hall,* —— U.S. ——, ——, 114 S.Ct. 2581, 2629, 129 L.Ed.2d 687 (1994) (separate opinion of Stevens, J.) (noting "the well-established principle that *stare decisis* has special force in the statutory arena"). Therefore, because *Johnson* turned on an interpretation of ERISA section 1301(b)(1) and corresponding regulations, we are especially unwilling to consider overruling it. Second, we gave the issue of the spousal attribution rule particularly careful and deliberate consideration in *Johnson. Cf. Akron v. Akron Ctr. for Reprod. Health,* 462 U.S. 416, 420 n. 1, 103 S.Ct. 2481, 2487 n. 1, 76 L.Ed.2d 687 (1983) (discussing the "especially compelling reasons for adhering to *stare decisis*" when "a case was considered

with special care"). We invited the PBGC, whose views on ERISA are entitled to deference, to file an amicus brief in that case. *See Johnson,* 991 F.2d at 391. We see no need to examine anew a case that received such consideration, particularly when its holding has been subsequently reaffirmed.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

Affirmed.