Slip Op. 06-80

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                          :
PAUL MÜLLER INDUSTRIE GMBH                :
& CO., et al.,                            :
                                          :
            Plaintiffs,                   :
                                          :    Before:            WALLACH, Judge
      v.                                  :    Consol. Court No.:  04-00522
                                          :
UNITED STATES,                            :
                                          :    **PUBLIC VERSION**
            Defendant,                    :
                                          :
and                                       :
                                          :
TIMKEN US CORPORATION,                    :
                                          :
            Defendant-Intervenor.         :
_____:

[Plaintiff's Motion For Judgment Upon the Agency Record is Partially Denied and Partially Remanded to Commerce.]

**DATED:** May 26, 2006

<u>Grunfeld, Desiderio, Lebowitz, Silverman, & Klestadt LLP</u>, (<u>Bruce M. Mitchell</u>, <u>Adam M. Dambrov</u>, <u>Mark E. Prado</u>, and <u>William F. Marshall</u>) for Plaintiff Paul Muller Industrie GmH & Co.

<u>Grunfeld, Desiderio, Lebowitz, Silverman, & Klestadt LLP</u>, (<u>Max F. Schutzman</u>, <u>Adam M. Dambrov</u>, and <u>William F. Marshall</u>) for Plaintiffs FAG Kugelfischer AG, FAG Italia S.p.A., Barden Corporation (U.K.) Limited, FAG Bearings Corporation and The Barden Corporation.

<u>Steptoe & Johnson LLP</u>, (<u>Herbert C. Shelley</u>, <u>Alice A. Kipel</u>, and <u>Susan R. Gihring</u>) for Plaintiffs SKF USA Inc., SKF France S.A., Sarma, SKF GmbH, and SKF Industrie S.p.A.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Patricia M. McCarthy, Assistant Director; Claudia Burke, Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch; and Elizabeth Doyle, Attorney-Advisor, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, for Defendant United States.

Stewart and Stewart, (Terence P. Stewart, William A. Fennell, Lane S. Hurewitz, and Geert De Prest) for Defendant-Intervenor Timken US Corporation.

**OPINION**

**Wallach, Judge:**

**I**
**Introduction**

Plaintiffs Paul Mueller Industrie, GmbH & Co. ("Paul Mueller"); FAG Kugelfischer AG, FAG Italia S.p.A., Barden Corporation (U.K.) Limited, FAG Bearings Corporation, and the Barden Corporation ("collectively "FAG"); SKF USA Inc., SKF France S.A., Sarma, SKF GmbH, and SKF Industrie S.P.A. (collectively "SKF"); and Timken US Corporation ("Timken") challenge the United States Department of Commerce's ("Commerce" or "the Department") findings in Antifriction Bearings and Parts Thereof From France, Germany, Italy, Japan, Singapore, and the United Kingdom: Final Results of Antidumping Duty Administrative Reviews, Rescission of Administrative Reviews in Part, and Determination To Revoke Order in Part, 69 Fed. Reg. 55,574 (September 15, 2004) ("Final Results") with regard to zeroing in the calculation of Plaintiffs' antidumping duty margins. The Final Results were amended in Ball Bearings and Parts Thereof From Germany; Amended Final Results of Antidumping Duty Admininstrative Review, 69 Fed. Reg. 63,507 (November 2, 2004). The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2004).

2

## II
## Background

On September 15, 2004, Commerce published in the Federal Register the Final Results of

its review of the antidumping duty orders on antifriction bearings and parts thereof from France,

Germany, Italy, Japan, Singapore, and the United Kingdom covering the period of review

("POR") of May 1, 2002, through April 30, 2003. Final Results at 55,574. The scope of this

order covers antifriction balls, ball bearings with integral shafts, ball bearings (including radial

ball bearings) and parts thereof, and housed or mounted ball bearing units and parts thereof.[1] Id.

at 55,575. In the Final Results, Commerce found a 5.25% weighted-average dumping margin for

SKF France and Sarma, 2.49% for SKF GmbH, 1.38% for SKF Industrie S.p.A., 0.36% for Paul

Mueller, 5.59% for FAG, and 4.79% for FAG Italia, S.p.A. See id. at 55,580.

On April 5, 2005, the court consolidated all the cases challenging the Final Results of the

thirteenth administrative review.[2] Oral argument was held on April 26, 2006.

---

[1] Imports of these products are classified under the following Harmonized Tariff
Schedules (HTSUS) subheadings:

> 3926.90.45, 4016.93.00, 4016.93.10, 4016.93.50, 6909.19.5010, 8431.20.00,
> 8431.39.0010, 8482.10.10, 8482.10.50, 8482.80.00, 8482.91.00, 8482.99.05,
> 8482.99.2580, 8482.99.35, 8482.99.6595, 8483.20.40, 8483.20.80, 8483.50.8040,
> 8483.50.90, 8483.90.20, 8483.90.30, 8483.90.70, 8708.50.50, 8708.60.50,
> 8708.60.80, 8708.70.6060, 8708.70.8050, 8708.93.30, 8708.93.5000,
> 8708.93.6000, 8708.93.75, 8708.99.06, 8708.99.31, 8708.99.4960, 8708.99.50,
> 8708.99.5800, 8708.99.8080, 8803.10.00, 8803.20.00, 8803.30.00, 8803.90.30,
> and 8803.90.90.

Final Results, at 55,575

[2] Paul Muller Industrie GmbH & Co. v. United States, Ct. No. 04-00522; FAG
Kugelfishcher AG, et al. v. United States, Court No. 04-00523, SKF USA Inc., et al. v. United
States, Court No. 04-00525, Timken US Corp. v. United States, Court No. 04-00529, were
consolidated under Paul Muller Industrie GmbH & Co. v. United States, Court No. 04-00522.

# III

## Standard of Review

This court will sustain Commerce's determinations, findings, or conclusions unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (2004); Magnesium Corp. of Am. v. United States, 166 F.3d 1364, 1368 (Fed. Cir. 1999); see also Micron Technology, Inc., v. United States, 117 F. 3d 1386, 1393 (Fed. Cir. 1997). Substantial evidence is deemed to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S. Ct. 456, 95 L. Ed. 456 (1951) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed 126 (1938)). Although the courts have considered substantial evidence to be something less than the weight of the evidence, the possibility of drawing two inconsistent conclusions from the presented evidence does not necessarily prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 619-20, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966) (citing Labor Board v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106, 62 S. Ct. 960, 86 L.Ed. 1305 (1942); Keele Hair & Scalp Specialists, Inc., et al. v. FTC, 275 F.2d 18, 21 (5th Cir. 1960)).

The court utilizes a two-step analysis to as, instructed by the Supreme Court, to determine the level of deference applicable to Commerce's statutory interpretation. Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc. et al., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984); see also Pesquera Mares Australes Ltda. v. United States, 266 F.3d 1372, 1382 (Fed. Cir. 2001). The court examines, first, whether "Congress has directly spoken to the precise question at issue," in which case, courts "must give effect to the unambiguously expressed intent of

4

Congress." See Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 239, 124 S. Ct. 1741, 158 L. Ed. 2d 450 (2004) (quoting Chevron, 467 U.S. at 842-3).  Whenever Congress has "explicitly left a gap for the agency to fill," the agency's regulation is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 843-44.  "When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. 'To sustain the [agency's] application of this statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings.'" Udall v. Tallman, 380 U.S. 1, 16, 85 S. Ct. 792, 13 L. Ed. 2d 616 (1965) (quoting Unemployment Comm'n v. Aragon, 329 U.S. 143, 153, 67 S. Ct. 245, 91 L. Ed. 136 (1946)).

## IV
## ANALYSIS
### A
### Commerce's Practice of Zeroing Is Supported by Substantial Evidence and Is In Accordance With Law

Each Plaintiff argues that Commerce's practice of assigning a zero margin to export price ("EP") or constructed export price ("CEP") sales made above normal value ("NV") is a violation of U.S. antidumping law and WTO dispute settlement decisions. Brief in Support of Paul Muller's Rule 56.2 Motion for Judgment Upon the Agency Record ("Paul Muller Motion") at 2; Brief in Support of FAG's Rule 56.2 Motion for Judgment Upon the Agency Record ("FAG Motion") at 2; Brief in Support of Consolidated Plaintiffs SKF's Rule 56.2 Motion for Judgment Upon the Agency Record ("SKF Motion") at 2; 19 U.S.C. § 1673.  SKF further argues that zeroing is "directly contrary to the clear language and intent of the relevant statutory provisions."

5

SKF Motion at 2. Plaintiffs further argue that Commerce's zeroing methodology is directly contrary to two WTO Appellate Body decisions which found zeroing to be a violation of the Antidumping Agreement. Id. at 26-27 (citing United States – Sunset Review of Antidumping Duties on Corrosion-Resistant Carbon Steel Flat Products from Japan, WT/DS244/AB/R (Appellate Body December 15, 2003); United States – Final Dumping Determination on Softwood Lumber from Canada, WT/DS264/AB/R (Appellate Body August 11, 2004).

The issue of zeroing has been affirmed and settled by the Federal Circuit in Corus Staal, B.V. v. United States, 395 F.3d 1343, 1348-49 (Fed. Cir. 2005). There is no reason to overturn Commerce's zeroing practice based upon a ruling by the WTO "unless and until such ruling has been adopted pursuant to the specified statutory scheme." Id. No such ruling has been adopted in this case; consequently, there is no reason to re-examine the issue of zeroing at this juncture. Commerce need only make a reasonable interpretation of the statute and the interpretation here at issue has been upheld several times based on that standard. See id. at 1347; Timken Company v. United States, 354 F.3d 1334, 1342 (Fed. Cir. 2004). Furthermore, it is a well-established rule of law that a trial court may not disregard precedent established by its reviewing court. Strickland v. United States, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005); see also PAM S.p.A. v. United States, 347 F. Supp.2d 1362, 1370 (CIT 2004). Unless the Supreme Court or the Federal Circuit expressly overrule Timken or Corus Staal, this court does not have the power to re-examine the issue of zeroing in administrative reviews. See Bankers Trust N.Y. Corp. v. United States, 225 F.3d 1368, 1372 (Fed. Cir. 2000).

Plaintiffs' wish to repeatedly challenge a particular holding does not make it irrelevant or not controlling. As Defendant-Intervenor correctly points out "[n]ew argument alone, however,

6

does not defeat binding precedent.  Stare decisis is a 'doctrine [that] carries such persuasive force that we have always required a departure from precedent to be supported by some "special justification.""" Response of Timken US Corporation to the Rule 56.2 Motions of SKF USA Inc., et al., FAG Bearings Corporation, et al., and Paul Mueller Industrie GmbH & Co., et. al. (citing United States v. International Business Machines Corp., 517 U.S. 843, 856, 116 S. Ct. 1793, 135 L. Ed. 2d 124 (1996) (quoting Arizona v. Rumsey, 467 U.S. 203, 212, 104 S. Ct. 2305, 81. L. Ed. 2d 164 (1984)).  Timken also aptly points out that "absent changed circumstances or new or modified rules or legislation, a new argument alone cannot overcome controlling precedent. Id.  In this case, none of the Plaintiffs offer a valid reason to disregard *stare decisis* and re-examine Commerce's interpretation concerning its zeroing methodology in administrative reviews.  Commerce's practice continues to be a reasonable interpretation of the statute, is supported by substantial evidence and is in accordance with law.

**B**

### Commerce's Methodology in Calculating Paul Mueller's U.S. Selling Expenses is in Accordance with Law

Timken alleges that Commerce unlawfully permitted Defendant Paul Mueller to offset U.S. selling expenses with currency exchange gains and losses. Timken US Corporation's Memorandum in Support of Its Rule 56.2 Motion for Judgment on the Agency Record ("Timken's Motion") at 3.  Timken argues that Paul Mueller's U.S. indirect expenses were offset by short term gains "resulting from 'the fluctuation in rates that can occur from the time of receipt into inventory and payment for the bearings.'" Id. at 6 (quoting Paul Mueller Rebuttal Brief at 4).  Timken further claims that it contested the legality of this offset during the administrative process, but Commerce continued to accept Paul Mueller's calculation of U.S.

7

selling expenses. Id. at 7. Timken's argument hinges on its belief that Commerce is limited to adjusting its calculations for foreign exchange gains and losses solely in the calculation of the cost of production and constructed value and not for selling expenses on sales to unaffiliated customers. Id. at 19.

Commerce claims that it properly treated Paul Mueller's affiliate's foreign exchange gains and losses as indirect selling expenses. Defendant's Response at 22. Commerce argues that the Statement of Administrative Action for the Uruguay Round Agreements Act ("SAA") allows for the deduction of expenses associated with economic activities in the United States from constructed export price. Id. at 23 (citing SAA, H.R. Doc. No. 103-316, at 823, reprinted in 1994 U.S.C.C.A.N. 4040, 4163-64 (1994)). Commerce states that when an

> importer sells a product in the United States, it will likely receive payment in another currency. Here, when Paul Mueller, sells its product to its affiliate in the United States, it sets it prices and receives payment in euros; however, its affiliate will sell the product in dollars. Thus its affiliated importer may recognize some gain or loss upon that transaction, depending upon the exchange rate for those two currencies.

Id. Commerce further argues that it is permitted to adjust the pool of expenses so that it accurately reflects the company's aggregate selling expenses, especially in cases such as the instant matter when these exchange gains and losses related directly to the U.S. affiliates' purchases of bearings from Paul Mueller and its corresponding sale of the merchandise to an unaffiliated purchaser. Id. at 23-24. Finally, Commerce asserts that it found no evidence that the gains and losses were related to investment activities or were long-term gains and losses. Id. at 24. As a result, Defendant asserts that its treatment of Paul Mueller's short term exchange gains and losses comports with the Department's practice. Id.

In determining whether or not Commerce's methodology is reasonable, the Court must

8

examine the facts as presented to Commerce. See Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620-21 (1966). Commerce's practice is to permit exchange gains and losses related to the sale of subject merchandise provided that the gains and losses were not investment related. See Final Determination of Sales at Less than Fair Value: Greenhouse Tomatoes from Canada, 67 Fed. Reg. 8,781, 8,783 (February 26, 2002). In the instant matter, the record evidence indicates that Paul Mueller and its affiliate GMN Bearing USA did not participate in currency hedging sales agreements and treated the gains and losses here at issue as selling expenses in their normal books and records. Defendant's Response at 25-26. Based upon the fact that Commerce relied upon Plaintiff, Paul Mueller's, own books and records and adjusted for expenses in accordance with 19 U.S.C. § 1677a(d)(1),[3] its treatment of Paul Mueller's foreign exchange gains and losses is supported by substantial evidence and is in accordance with law.

**C**

**Commerce's Treatment of Paul Mueller's Inventory Carrying Costs is Remanded for Further Explanation**

Timken alleges that Paul Mueller's reported home market and U.S. inventory carrying costs utilize different methodologies for allocating these imputed costs to individual sales. Timken's Motion at 21. Timken claims that Paul Mueller "multiplied the interest factor with the entered value" for U.S. sales, whereas, for home market sales, it "multiplied the interest factor with the average ratio between costs of goods sold and the gross unit price." Id. Timken argues that this allegedly inconsistent treatment results in U.S. imputed expenses being allocated on the basis of affiliated party prices and home market imputed expenses being allocated on the basis of

---

[3] 19 U.S.C § 1677a(d)(1) permits constructed export price to be reduced by "the amount of any of the following expenses generally incurred by or for the account of the producer or exporter, or the affiliated seller in the United States . . .."

arm's-length prices. Id.  According to Timken, permitting this type of inconsistent allocation of expenses is contrary to law and Commerce's practice and must be remanded to either conform with its practice or explain the departure. Id. at 24.

Commerce claimed that it accepted Paul Mueller's reported inventory carrying costs and although Timken raised this issue during the administrative proceedings, Commerce did not directly address the issue in its Final Results. Defendant's Response at 28-29.  Accordingly, Commerce's request for a remand to fully explain its calculation of Paul Mueller's inventory carrying costs, and if necessary open the record for additional information is granted.

**D**

**Commerce's Request for a Remand to Re-Adjust Paul Mueller's Margin Program is Granted**

Timken alleges that there is a clerical error in Commerce's margin program in the lines adjusting home market billing adjustments. Timken's Motion at 25.  Timken states that this calculation adjustment was intended to correct one observation, however, the programing language resulted in correcting all observations with the same invoice number. Id.

Commerce agrees with Timken's allegation of clerical error and requests a remand to correct this error.  Commerce's request for remand to correct Paul Mueller's margin program is granted.

10

## V

## Conclusion

For the above stated reasons, Commerce's determination is partially sustained and partially remanded for action consistent with this opinion.

_/s/ Evan J. Wallach___
Evan J. Wallach, Judge

Dated: May 26, 2006
    New York, New York