[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 318.]

THE STATE OF OHIO, APPELLEE, *v*. LOMAX, APPELLANT.

[Cite as *State v. Lomax*, 2002-Ohio-4453.]

*Criminal law—Aggravated murder—Trial court grants defendant's motion to be*
   *sentenced in accordance with R.C. 2929.03(A)—Appeal by state—In light*
   *of R.C. 2945.67(A) requirements, court of appeals lacks subject-matter*
   *jurisdiction to review trial court's judgment entry.*

(Nos. 1999-0889 and 1999-1113—Submitted May 7, 2002—Decided September
11, 2002.)

APPEALS from the Court of Appeals for Sandusky County, Nos. S-99-014 and S-
97-037, and from the Sandusky County Court of Common Pleas, No. 96 CR 448.

_____

DOUGLAS, J.

{¶1} On June 21, 1996, the grand jury indicted appellant, Tazwell Lomax, on six counts relating to a murder and robbery that took place on June 13, 1996, in Fremont, Ohio. Count One alleged aggravated murder with prior calculation and design in violation of R.C. 2903.01(A). Count Two alleged aggravated murder while committing or attempting to commit rape in violation of R.C. 2903.01(B). Count Three alleged aggravated murder in the course of an aggravated robbery in violation of R.C. 2903.01(B). Count Four of the indictment alleged voluntary manslaughter in violation of R.C. 2903.03. The fifth count alleged rape in violation of R.C. 2907.02. The sixth count alleged aggravated robbery in violation of R.C. 2911.01. Each of the first three counts carried three identical specifications. The first specification charged that the murder "was committed for the purpose of escaping detection, apprehension, trial or punishment." The second specification charged that the murder was perpetrated during the commission of or immediately after the commission of aggravated robbery. The third specification charged that

appellant perpetrated the murder while committing or immediately after committing rape.

{¶2} Prior to trial, the state dismissed Count Two and all of its specifications, Count Five, and the rape specifications from Counts One and Three. Based upon the remaining allegations in Count One of the indictment, appellant would have been, if found guilty, subject to the death penalty. The case then proceeded to trial, where appellant waived his right to a trial by jury and requested, pursuant to R.C. 2945.06, trial by a three-judge panel.

{¶3} On May 7, 1997, based upon the evidence presented at trial, the three-judge panel found appellant guilty of aggravated murder under Count Three and guilty of committing aggravated murder while committing or immediately after committing aggravated robbery under the second specification to Count Three. Appellant was also found guilty of aggravated robbery under Count Six. The three-judge panel found appellant *not guilty* of aggravated murder with prior calculation and design under Count One, not guilty of voluntary manslaughter under Count Four, and not guilty of the first specification to Count Three.

{¶4} Following the court's May 7, 1997 written decision denominated by the three-judge panel as "verdicts," and immediately prior to the penalty phase of the trial, appellant moved the court to sentence him in accordance with R.C. 2929.03(A), which provides that if the count in the indictment charging aggravated murder does not contain one or more specifications of aggravating circumstances listed in R.C. 2929.04(A), then following a verdict of guilty of the charge of aggravated murder, the trial court shall impose on the offender a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment.

{¶5} The pertinent portion of R.C. 2929.04 provides:

{¶6} "(A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the * * * count in the indictment * * *:

2

**{¶7}** "* * *

**{¶8}** "(7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, *and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design."* (Emphasis added.)

**{¶9}** Appellant argued that he was found guilty of Count Three but not guilty of Count One. Since Count Three failed to charge a required element of R.C. 2929.04(A)(7)—that appellant was either the principal offender in the murder or that he had committed the murder with prior calculation and design—appellant argued that he was convicted of nondeath-eligible offenses only. In response to appellant's motion, the state moved the court for leave to amend the indictment to include the appropriate R.C. 2929.04(A)(7) language in Count Three so that the death penalty might be imposed for the conviction on that count.

**{¶10}** On May 8, 1997, the court entered a judgment granting appellant's motion to be sentenced in accordance with R.C. 2929.03(A) and denying the state's motion to amend the indictment. The trial court in denying the motion to amend stated, "If the Grand Jury had selected 'prior calculation and design' for the specification at issue, the final verdict on Count One shows that the three-judge panel would have found Defendant not guilty of the specification," and in addition, the trial court could not "infer that the Grand Jury's intention was to indict the Defendant as a 'principal offender.' " Therefore, since there were no death-penalty specifications for aggravated murder, the trial court agreed with appellant that he was to be sentenced in accordance with R.C. 2929.03(A).

**{¶11}** On May 14, 1997, the state appealed the trial court's denial of the motion to amend Count Three of the indictment. The state claimed to have an appeal as of right pursuant to R.C. 2945.67(A) because the trial court had dismissed

a portion of the indictment. In the alternative, the state requested leave to appeal. The court of appeals denied the state's motion to appeal as of right, finding that "the trial court's decision did not dismiss any portion of the indictment; rather, it merely found the specification was insufficient to invoke the death penalty." However, the court of appeals granted the state's motion for leave to appeal. While the appeal regarding Count Three was pending, the trial court proceeded to sentence appellant for aggravated robbery to a prison term of not less than ten years and not more than twenty-five years. Appellant appealed the aggravated robbery conviction. The court of appeals stayed that appeal until the other issues relating to the state's appeal were resolved.

{¶12} Over a year later, on June 26, 1998, the court of appeals reversed the trial court's denial of the state's motion to amend the indictment, remanded the case, and ordered the trial court to permit the amendment of Count Three of the indictment to include the "omitted" language of R.C. 2929.04(A)(7).[1] The court of appeals also ordered the trial court to conduct a mitigation hearing and proceed to sentencing in accordance with R.C. 2929.03 without first permitting the three-judge panel to consider the issue of whether appellant was the principal offender. Thus, the court of appeals implicitly ordered the trial court to find that appellant was the principal offender in the aggravated murder.

{¶13} On March 25, 1999, the three-judge panel, pursuant to the order of the court of appeals, amended specification two of Count Three of the indictment so as to include the "principal offender" language of R.C. 2929.04(A)(7). After conducting the mitigation hearing, the panel determined that the aggravating circumstances of the offense outweighed the mitigating factors and sentenced appellant to death.

---

1. The court of appeals did not specifically identify what language of R.C. 2929.04(A)(7) had to be added to Count Three. A review of the record clearly indicates that the court was ordering the trial court to amend Count Three to include the "principal offender" language of R.C. 2929.04(A)(7).

{¶14} On April 20, 1999, appellant appealed his aggravated murder conviction and death sentence to the Sandusky County Court of Appeals. The court of appeals dismissed that appeal as well as the appellant's previously stayed appeal of the aggravated robbery conviction, finding that, pursuant to Section 2(B)(2), Article IV, Ohio Constitution, it did not have jurisdiction to accept an appeal in a death-penalty case.

{¶15} On May 7, 1999, appellant filed a notice of appeal in case No. 1999-0889 to this court, appealing from the trial court's judgment entry and opinion convicting him of aggravated murder and aggravated robbery and sentencing him to death. On June 15, 1999, appellant filed a notice of appeal in case No. 1999-1113 from the court of appeals' dismissal of his appeal to that court of his convictions and death sentence. Case Nos. 1999-0889 and 1999-1113 have been consolidated for this appeal. Appellant now appeals to this court as a matter of right.

{¶16} Appellant has presented fifteen propositions of law for our consideration. While not presented as a proposition of law, the threshold issue in this case is whether, in light of the requirements of R.C. 2945.67(A), the court of appeals had subject-matter jurisdiction to review the trial court's May 8, 1997 judgment entry. We believe that it did not.

{¶17} Since subject-matter jurisdiction cannot be waived and may be raised by this court sua sponte, appellant's failure to raise this argument on appeal does not foreclose this court's authority to review the issue.[2] *State ex rel. Bond v. Velotta Co.* (2001), 91 Ohio St.3d 418, 419, 746 N.E.2d 1071.

---

2. On May 24, 2002, subsequent to the submission of this case on the merits, appellant filed a motion to vacate the death sentence and to dismiss appellant's appeal due to lack of jurisdiction. For the reasons set forth in this decision, the motion is moot.

{¶18} In order to determine whether the court of appeals had subject-matter jurisdiction to accept the state's May 14, 1997 appeal, we must review the requirements of R.C. 2945.67(A).

{¶19} R.C. 2945.67(A), which governs appeals by the state in criminal cases, provides:

{¶20} "A prosecuting attorney * * * may appeal as a *matter of right* any decision of a trial court in a criminal case * * * which decision grants a motion to dismiss all or any part of an indictment, complaint, or information, a motion to suppress evidence, or a motion for the return of seized property or grants post conviction relief * * * and may appeal *by leave of the court* to which the appeal is taken any other decision, *except the final verdict*, of the trial court in a criminal case * * *."  (Emphasis added.)

{¶21} Initially, we agree with the court of appeals' finding that the state did not, pursuant to R.C. 2945.67(A), have a proper basis to appeal as of right the trial court's May 8, 1997 order.  The trial court's order denying the state's motion to amend the indictment was not a dismissal of all or any part of the indictment, since the principal-offender language of R.C. 2929.04(A)(7) was never included in Count Three or in any other part of the indictment.  The trial court order was merely a ruling on the language contained in the indictment, not a dismissal of all or part of the indictment itself.  In addition, the trial court's May 8, 1997 order did not involve any of the remaining circumstances set forth in R.C. 2945.67(A) for an appeal as of right.

{¶22} Turning now to the other pertinent part of R.C. 2945.67(A), it is clear that the state may not appeal, even by leave of court, an order that is the "final verdict" in the case.  The statute on its face is clear, and it needs to be applied—not interpreted.

{¶23} Obviously, the key word for us to consider in the case at bar is "verdict."  "Verdict" is defined as "1. A jury's finding or decision on the factual

6

issues of a case. 2. Loosely, in a nonjury trial, a judge's resolution of the issues of a case." Black's Law Dictionary (7th Ed.Rev.1999) 1554. The three-judge panel styled its findings and order of May 7, 1997, "verdicts." It did so because that is exactly what its findings were—the resolution of the issues of guilt. When the highly competent panel found appellant guilty of two counts and not guilty of the remaining two counts in the indictment, that was the final verdict in the case.

{¶24} In its May 14, 1997 appeal, the state asked the court of appeals to allow it to amend the indictment so that appellant would be eligible for a death sentence. When the court of appeals ordered the panel to conduct a mitigation hearing on remand, it in effect ordered the panel to make a factual finding that appellant was the principal offender in the murder even though the three-judge panel, in its entry of May 7, 1997, had made no such finding. While, given the facts of the case, it may have been obvious that appellant was the principal offender, that is not the issue. Appellant was not so charged, and for him to become death-eligible, the indictment must, when the specification is one charged pursuant to R.C. 2929.04(A)(7), specifically set forth that the appellant committed the murder with prior calculation and design and/or was the principal offender. Appellant was found not guilty by the panel as to prior calculation and design, the only death-penalty language in the indictment. In seeking by way of appeal to correct the omission, the state was simply mounting a collateral attack on a final verdict. R.C. 2945.67(A) specifically prohibits such an appeal; therefore, the court of appeals lacked subject-matter jurisdiction to grant leave to the state to appeal the panel's ruling denying the state's motion to amend.

{¶25} For the foregoing reasons, we remand this case to the trial court for sentencing, with instructions to sentence appellant pursuant to R.C. 2929.03(A)(1), in accordance with its May 8, 1997 order.[3]

---

3. Given our holding herein, this court does not reach the remaining issues raised by appellant, because the sentence of death is no longer at issue.

Judgment reversed

and cause remanded.

MOYER, C.J., F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in judgment.

NADER, J., dissents.

ROBERT A. NADER, J., of the Eleventh Appellate District, sitting for RESNICK, J.

_____

**COOK, J., concurring in judgment.**

{¶26} I remain unconvinced that the state appealed "the final verdict" within the meaning of R.C. 2945.67(A) when it sought leave to appeal the trial court's denial of its motion to amend the indictment. Rather than appealing the "final verdict" itself, the state appealed the trial court's substantive ruling on the propriety of amending the indictment following trial. "A court of appeals has discretionary authority pursuant to R.C. 2945.67(A) to review substantive law rulings made in a criminal case which result in a judgment of acquittal so long as the judgment itself is not appealed." *State v. Bistricky* (1990), 51 Ohio St.3d 157, 555 N.E.2d 644, syllabus.

{¶27} Despite my disagreement with the majority over the nature of the state's interlocutory appeal, I agree that Lomax is ineligible for the death penalty. The trial court determined that it had not found Lomax guilty of a capital specification. Under controlling United States Supreme Court precedent, such a determination operates as an "acquittal on the merits" on the question of whether death was an appropriate punishment. *Arizona v. Rumsey* (1984), 467 U.S. 203, 211, 104 S.Ct. 2305, 81 L.Ed.2d 164. Accordingly, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution barred any further sentencing proceedings that could have resulted in the death penalty. See id.;

8

*Bullington v. Missouri* (1981), 451 U.S. 430, 443-446, 101 S.Ct. 1852, 68 L.Ed.2d 270.

{¶28} Whatever the correctness of the trial court's ruling on the state's posttrial motion to amend the indictment, the court of appeals should *not* have reversed and remanded for capital sentencing proceedings that would run afoul of double jeopardy principles. See *State v. Edmondson* (2001), 92 Ohio St.3d 393, 395-396, 750 N.E.2d 587; see, also, *Smalis v. Pennsylvania* (1986), 476 U.S. 140, 145, 106 S.Ct. 1745, 90 L.Ed.2d 116 ("When a successful postacquittal appeal by the prosecution would lead to proceedings that violate the Double Jeopardy Clause, the appeal itself has no proper purpose"). I would accordingly sustain Lomax's second proposition of law and reverse the judgment on that basis.

————————————

**ROBERT A. NADER, J., dissenting.**

{¶29} Consistent with the concurring opinion of Justice Cook, I conclude that the majority opinion has mischaracterized the nature of the initial appeal brought by the state in this matter. Instead of challenging the factual findings upon which the trial court's final verdict was based, the state limited the scope of its appeal to the issue of whether the trial court had properly denied the motion to amend the death-penalty specification under the third count of aggravated murder. As the opening paragraph of the concurring opinion aptly notes, the case law of this court supports the conclusion that the denial of a motion to amend is the type of judgment the state can appeal under R.C. 2945.67(A) if it is granted leave to appeal. Thus, the Sixth District Court of Appeals clearly acted within the scope of its jurisdiction when it allowed the state's appeal to go forward.

{¶30} However, in regard to the double jeopardy analysis in the concurring opinion, I cannot agree that the trial court was constitutionality prohibited from conducting a mitigation proceeding after the appellate court remanded the case for further proceedings. In *Arizona v. Rumsey* (1984), 467 U.S. 203, 104 S.Ct. 2305,

81 L.Ed.2d 164, the trial judge expressly found, after conducting a full sentencing hearing, that the state had failed to prove the existence of an aggravating circumstance. After the trial judge imposed a life sentence on the first-degree murder charge, the Supreme Court of Arizona reversed the trial judge's determination and held that the state's evidence had been legally sufficient to establish the aggravating circumstance. Upon remand, the trial judge conducted a new sentencing hearing and imposed the death penalty upon the defendant.

{¶31} Rumsey ultimately appealed his sentence to the United States Supreme Court. Upon reviewing the nature of a sentencing hearing under the Arizona death-penalty law, the court held that the defendant could not be subjected to a second sentencing hearing once the trial judge had entered a judgment of acquittal on the issue of death-penalty eligibility at the initial sentencing hearing. In concluding that the doctrine of double jeopardy applies to these circumstances, the court noted that an Arizona sentencing hearing has attributes of a criminal trial. Noting that the statutes require the presentation of evidence and argument at the hearing, the court emphasized that an Arizona trial judge has the discretion to impose one of two possible sentences following the hearing, has to consider certain statutory guidelines in making the decision, and has to make specific findings as to the mitigating and aggravating circumstances.

{¶32} Under *Rumsey*, the sentencing hearing in a death-penalty action is viewed as a separate proceeding for purposes of double jeopardy, i.e., the wording of the opinion supports the conclusion that jeopardy does not attach in regard to the imposition of the death penalty until the sentencing hearing begins. Accordingly, the basic principles of double jeopardy would apply in this instance, one of which is that jeopardy does not attach in a nonjury criminal proceeding until the first witness is sworn to testify. *Crist v. Bretz* (1978), 437 U.S. 28, 37, 98 S.Ct. 2156, 57 L. Ed.2d 24, fn. 15.

10

**{¶33}** In the instant case, the three-judge panel granted Lomax's motion to be sentenced under R.C. 2929.03(A) before the mitigation hearing began. In essence, Lomax's motion was akin to a pretrial motion to dismiss a portion of the indictment. Under these circumstances, jeopardy had not attached in the mitigation phase of the trial. Consequently, pursuant to *Rumsey*, the doctrine of double jeopardy was not violated when the Sixth District Court of Appeals ordered the trial court to hold a mitigation hearing to determine whether the death penalty should be imposed. In light of the foregoing analysis, I conclude that Lomax's second proposition of law in these appeals lacks merit.

**{¶34}** In addition to the foregoing, I would further hold that the Sixth District Court of Appeals did not err in reversing the trial court's decision concerning Lomax's sentencing motion. Regarding the issue of whether an indictment can be amended after a verdict, I note that a number of Ohio courts have addressed scenarios similar to that discussed in Lomax's first proposition of law. For example, in *State v. Esparza* (May 29, 1992), 6th Dist. No. L-90-235, 1992 WL 113827, the defendant argued that the trial court had lacked the authority to impose the death penalty because the wording of a death-penalty specification in the indictment had been deficient. Specifically, the defendant noted that the specification under R.C. 2929.04(A)(7) had not contained an allegation either that he had been the principal offender in the commission of the aggravated murder or that he had committed the aggravated murder with prior calculation and design. In rejecting the defendant's argument, the appellate court held that the lack of a reference to the "principal offender" had not affected the validity of the indictment:

**{¶35}** "Under Crim.R. 7(B), an indictment must charge an offense in words sufficient enough to give the accused notice of all the elements with which he is charged. Upon a review of the indictment in this case, we conclude that it did notify Esparza of all of the elements of the offense. In particular, we conclude that where only one defendant is named in an indictment alleging felony murder, it would be

redundant to state that the defendant is being charged as the principal offender. Only where more than one defendant is named need the indictment specify the allegation 'principal offender.' " Id.

{¶36} A similar situation occurred in *State v. Biros* (1997), 78 Ohio St.3d 426, 678 N.E.2d 891. In *Biros*, the indictment contained two death-penalty specifications under R.C. 2929.04(A)(7). However, the specifications alleged only that the defendant had committed the aggravated murder while he was in the process of committing aggravated robbery or rape; there was no reference to "principal offender" in either specification. Before this court, defendant argued that the imposition of the death penalty should be reversed because the language in the indictment had been insufficient to charge him with a capital offense. In concluding that plain error had not occurred, this court stated:

{¶37} "However, notwithstanding that omission, the indictment clearly provided appellant with adequate notice of the death penalty specifications with which he was being charged. The record clearly demonstrates that at all stages of the proceedings, appellant understood that he was being prosecuted for having personally killed Tami Engstrom during the course of an aggravated robbery and attempted rape. * * * Moreover, appellant was indicted and tried on the basis that he had acted alone in the killing, without any accomplices. He was the only individual accused of killing Tami Engstrom and, as the only offender, appellant was, *ipso facto*, the 'principal offender.' Based upon the rationale and holdings in [*State v.*] *Joseph* [(1995), 73 Ohio St.3d 450, 653 N.E.2d 285], we reject appellant's arguments concerning the sufficiency of the indictment." Id., 78 Ohio St.3d at 438, 678 N.E.2d 891.

{¶38} The *Biros* analysis would clearly be applicable to the facts of the instant case. The record before us shows that Lomax never objected to the sufficiency of the indictment until his motion for sentencing under R.C. 2929.03(A). Although the allegation concerning the death-penalty specification

12

did not use the "principal-offender" language, it was sufficient to notify Lomax that he had been charged under R.C. 2929.04(A)(7). Moreover, the nature of the underlying facts was such that there could have been only one perpetrator of the charged crimes; accordingly, Lomax and his trial counsel had to have been aware that he was charged as the principal offender in the aggravated murder.

{¶39} Given these circumstances, I conclude that the omission of the "principal-offender" language in the R.C. 2929.04(A)(7) specification under the third count did not prejudice Lomax during the guilt phase of the trial. In turn, it also follows that the trial court should have granted the state's motion to amend the indictment prior to the beginning of the penalty phase.

{¶40} Finally, I would further hold that Lomax was not prejudiced by the fact that the three-judge panel did not make a specific finding on the "principal-offender" issue during the guilt phase of his trial. In *Biros*, the defendant contended that the death penalty could not be imposed because the jury had never been instructed on the "principal-offender" issue. As to this particular point, the *Biros* court held that the failure to so instruct the jury did not constitute plain error when the evidence was such that the jury could only have found that the defendant had been the principal offender. See, also, *State v. Bonnell* (1991), 61 Ohio St.3d 179, 184, 573 N.E.2d 1082.

{¶41} Even though the three-judge panel in this case, like the jury in *Biros*, did not make a finding on the "principal-offender" issue, the evidence was such that the panel could only have found that Lomax had been the principal offender in the underlying crimes. I would emphasize that, as part of its verdict during the guilt phase, the three-judge panel found Lomax not guilty of the first aggravated murder count, under which it was alleged that he had committed the murder with prior calculation and design. Despite this determination, the panel concluded that Lomax was guilty of aggravated murder. As a result, the three-judge panel must have found him to be the principal offender in the commission of the aggravated murder,

since there simply was no evidence or suggestion that another offender was involved.

{¶42} Under these circumstances, the Sixth District Court of Appeals did not err in concluding that all of the requirements for the imposition of the death penalty had been satisfied by the state during the guilt phase. Thus, I would hold that Lomax's first proposition of law is without merit.

{¶43} In regard to the other propositions of law raised by Lomax, I further conclude that he has failed to demonstrate that any prejudicial error occurred in the trial proceedings. Moreover, I would uphold the imposition of the death penalty under the facts of this case. Because I would affirm both the appellate court's original judgment and the trial court's final judgment in all respects, I respectfully dissent from the opinion of the majority.

————————————

John E. Meyers, Sandusky County Prosecuting Attorney, Norman P. Solze and Ronald Mayle, Assistant Prosecuting Attorneys, for appellee.

Betty D. Montgomery, Attorney General, James V. Canepa and Norman E. Plate, Assistant Attorneys General, for appellee.

David H. Bodiker, Ohio Public Defender, Stephen A. Ferrell and Pamela J. Prude-Smithers, Assistant Public Defenders, for appellant.

————————————