[Cite as *State v. Golsby*, 2019-Ohio-1618.]

THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

        Plaintiff/Cross-Appellant,      :        No. 18AP-322
                                    (C.P.C. No. 17CR-912)

v.                                                     :

                                       (REGULAR CALENDAR)

Brian L. Golsby,                                       :

        Defendant/Cross-Appellee.       :

---

D E C I S I O N

Rendered on April 30, 2019

---

*Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for
State of Ohio.

*Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for
Brian L. Golsby.

---

ON MOTION FOR LEAVE TO CROSS-APPEAL

BROWN, J.

{¶ 1} Plaintiff, State of Ohio, has filed a motion for leave to cross-appeal from entries of the Franklin County Court of Common Pleas filed on April 6 and 20, 2018, in which the trial court sentenced defendant, Brian L. Golsby, following his convictions for aggravated murder, kidnapping, rape, aggravated robbery, tampering with evidence, and having a weapon while under disability. The state seeks to challenge a jury instruction given by the trial court (over the state's objection) during the penalty phase of the underlying capital trial regarding the defendant's burden of proof applicable to mitigating factors.

{¶ 2}   The state's motion for leave to cross-appeal is brought pursuant to App.R. 5(C) and R.C. 2945.67(A).  Although the state "is not permitted to appeal a final verdict in a criminal case, * * * including a judgment of acquittal under Crim.R. 29[,] * * * the state *is* permitted to seek leave to appeal ' "any other decision," ' such as evidentiary rulings." (Emphasis sic.)  *State ex rel. Ramirez-Ortiz v. Twelfth Dist. Court of Appeals*, 151 Ohio St.3d 46, 2017-Ohio-7816, ¶ 9, quoting *State v. Keeton*, 18 Ohio St.3d 379, 381 (1985), quoting R.C. 2945.67(A).  In this respect, the Supreme Court of Ohio has made clear the state may "pursue a discretionary appeal of 'substantive law rulings * * * which result in a judgment of acquittal so long as the judgment itself is not appealed.' " *Id.,* quoting *State v. Bistricky,* 51 Ohio St.3d 157 (1990), syllabus.  Further, "[r]eview in a state appeal is granted when the underlying legal question is capable of repetition yet evading review." *State v. Gott,* 6th Dist. No. L-11-1086, 2011-Ohio-3608, ¶ 3, citing *Bistricky* at 158-59; *Storer v. Brown*, 415 U.S. 724, 737 (1974), fn. 8.  *See also State v. Durbin*, 9th Dist. No. 10CA0136-M, 2012-Ohio-301, ¶ 7, quoting *State v. Davis*, 5th Dist. No. 03 CA-A-07038, 2004-Ohio-2804, ¶ 9 ("Even though the State may not appeal the final verdict in a criminal case, the issue is not moot if 'the underlying legal question is capable of repetition yet evading review.' ").

{¶ 3}   As noted, the state seeks leave to appeal the trial court's ruling on penalty phase jury instructions.  Specifically, the state argues the trial court erred "when it refused to instruct the jury on defendant's preponderance burden and instead instructed the jury that defendant bore no burden of proof as to the mitigating factors in the penalty phase." (State's Brief at 15.)  The ruling of the trial court for which the state seeks leave to appeal falls within the ambit of "any other decision" under R.C. 2945.67(A), as well as the holding in *Bistricky* regarding the discretionary authority of an appellate court to review substantive legal rulings capable of repetition*. See State v. Streight,* 3d Dist. No. 2-01-23 (Feb. 14, 2002) (electing to review, under R.C. 2945.67(A), state's appeal of "substantive ruling of the trial court which resulted in the administration of a particular jury instruction"). Pursuant to R.C. 2945.67(A) and *Bistricky*, this court exercises its discretionary authority to grant the state's motion for leave to cross-appeal the substantive law ruling of the trial court.

{¶ 4}  Finally, for purposes of deciding the limited issue presented in the motion before us, i.e., whether to grant leave to appeal, we deem it inappropriate at this juncture to address or express opinion as to the merits of the cross-appeal (including issues not yet fully briefed by the parties).  In this respect, to the extent the dissent has undertaken a discussion of double jeopardy (and ostensibly reaches a determination on the merits that jeopardy has terminated, thereby barring any further proceedings), we find consideration of double jeopardy issues to be premature at this time.  Nor, under Ohio law, would the potential bar of double jeopardy preclude this court from exercising its discretionary authority to review a substantive law issue capable of repetition yet evading review. Rather, even in cases where "principles of double jeopardy bar re-trial, an appellate court's disposition of such appeals does not result in an advisory opinion where the underlying question is capable of repetition yet evading review."  *State v. Ingram,* 12th Dist. No. CA2006-01-012, 2006-Ohio-4559, ¶ 7, citing *Bistricky* at 158-59.  *See also State v. Hatfield*, 8th Dist. No. 95647, 2011-Ohio-6620, ¶ 13.

{¶ 5}  Accordingly, the state's motion for leave to cross-appeal is granted.

*Motion for leave to cross-appeal granted.*

SADLER, J., concurs.
BRUNNER, J., dissents.

BRUNNER, J., dissenting.

{¶ 6}  I respectfully dissent from the decision of the majority and would deny the State's motion for leave to appeal.  The seminal case the majority relies on in granting the appeal is *State v. Bistricky*, 51 Ohio St.3d 157 (1990), which is based on long-standing law found in *State v. Wallace*, 43 Ohio St.2d 1 (1975), citing *State v. Hughes*, 41 Ohio St.2d 208 (1975), that only the legislature grants to the State, pursuant to R.C. 2945.67, a substantive appeal in a criminal case, but this right is subject to the exercise of discretion by courts of appeals on the State's application for leave.  *Wallace* at 1, 2.  In *Bistricky*, the State's high court reversed the Eighth District Court of Appeals because it could not discern by the appellate court's decision how it exercised its discretion.

**Exercise of Discretion by this Court**

{¶ 7}  The high court in the pre-*Bistricky* case of *Wallace* quoted App.R. 5(A), the substance of which is now App.R. 5(C), that the State's motion for leave to appeal must set

forth the errors claimed to have occurred in the proceedings of the trial court, accompanied by affidavits or such parts of the record to show the probability that the errors claimed did in fact occur along with a brief or memorandum in support of the State's claims and the State's actual notice of appeal. *Wallace* at 1, 3. Thus, under *Wallace* and *Bistricky*, our exercise of discretion must be apparent by our decision, in deciding whether the State is entitled to a statutory appeal under R.C. 2945.67, notwithstanding the acquittal of the defendant. *State v. Arnett*, 22 Ohio St.3d 186, 188 (1986). The high court in *Bistricky* stated: "We, therefore, reverse the judgment of the court of appeals to the extent that it found no authority, pursuant to R.C. 2945.67(A), to consider the state's appeal and remand the cause to that court to exercise its discretion *to decide whether it will accept or decline review of the matters of substantive law presented.*" (Emphasis added.) *Id.* at 160. That the majority does not analyze the State's arguments in its motion but instead views our discretion as being enough to grant the motion does not satisfy our charge from the legislature under R.C. 2945.67. We must explain why we exercise our discretion in granting the State's motion, and the issue the State raises as being capable of repetition yet evading review is not enough when viewing the State's motion under a *Bistricky* analysis.

**The Nature of Appellate Discretion**

{¶ 8} The nature of our appellate discretion has been discussed by the Supreme Court of Ohio in the context of actions as of right before courts of appeals, such as mandamus. This discretion is effectively described as being such that we do not exercise "arbitrary discretion." *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 161 (1967). Rather, the discretion in granting or denying is "a judicial or legal one, to be exercised * * * in accordance with well settled rules of law." *Id.* As such, it is "a palpable abuse of discretion" when the right to relief requested is not established. *Id.* In the exercise of its discretion, an appellate court "should take into consideration a wide variety of circumstances" and "should consider the facts of the particular case, the exigency which calls for the exercise of its discretion [and] the consequences of" exercising it in granting relief, along with the "extent of the wrong or injury which would follow a refusal" to exercise its discretion to grant the requested relief. *Id.* The appellate court is not bound to grant relief even though legal arguments would support a remedy and even though

without it the State would be without a remedy. The remedy must not be granted on technical grounds but, rather, granting or refusal depends on "whether or not it promotes substantial justice." *Id.*

{¶ 9} The majority cites *Bistricky* for the proposition that the State's disagreement with the jury instruction given during the mitigation phase of the trial is one that is capable of repetition, yet evading review. But this was not the basis for the high court's reversal of the Eighth District in *Bistricky.* Rather, the high court said "the court of appeals' statement that it lacked authority to consider the state's appeal suggests an interpretation of R.C. 2945.67 that will be applied to other state appeals. Therefore, the instant appeal is not moot." *Id.* at 157, 159. The high court viewed the decision of the court of appeals as not being a demonstrated exercise of discretionary jurisdiction such as is required by R.C. 2945.67 but, rather, a blanket, rote application of the statute that was devoid of discretionary interpretation. It was *this decision* that the high court found capable of repetition yet evading review, even though moot, because it could be repeated by other appellate courts. It was to this decision the high court applied the principles of mootness found in *Storer v. Brown*, 415 U.S. 724, 737 (1974), fn. 8, and *In re Protest Filed by Citizens for the Merit Selection of Judges, Inc.*, 49 Ohio St.3d 102 (1990), and reversed the appellate court's decision. *Bistricky* at 158-59. The appellate court was instructed to "exercise its discretion to decide whether it will accept or decline review of the matters of substantive law presented." *Id.* at 160.

{¶ 10} We must specifically exercise our discretion on the substantive arguments the State posits according to and as required by App.R. 5(C) before we decide its motion. We cannot simply acknowledge our discretion under R.C. 2945.67, find that the jury instruction question that is raised, without performing our own analysis, is enough to grant leave to appeal because it is capable of repetition and yet evades review, then leave for another day the substantive issues the State is required to present and we are required to consider in support of its leave to appeal. The essence of *Bistricky* is that we must examine the State's arguments *now* in deciding whether or not it gets an appeal. A discussion of those issues follows.

**Substantive Issues of Law in Deciding the State's Motion for Leave to Appeal**

{¶ 11} In short, we should deny the State's appeal for three main reasons: First, the State cannot appeal final verdicts. R.C. 2945.67(A). To the extent it is appealing the jury's verdict sentencing Golsby to life, the motion must be denied. Second, even if the State's appeal were construed not to be an appeal of the final verdict itself but instead an appeal of the abstract legal question about the appropriate jury instructions, it is moot as to Golsby, since Golsby can't be "redeathed"—a verdict of life is regarded as an "acquittal" by the U.S. Supreme Court for purposes of double jeopardy. *Arizona v. Rumsey*, 467 U.S. 203, 211 (1984); *Bullington v. Missouri*, 451 U.S. 430, 445-46 (1981). "When a successful postacquittal appeal by the prosecution would lead to proceedings that violate the Double Jeopardy Clause, the appeal itself has no proper purpose." *Smalis v. Pennsylvania*, 476 U.S. 140, 145 (1986). Third, even if the State's appeal were not of the verdict itself and if the State were not seeking to "redeath" Golsby, we could only hear the appeal if it were "capable of repetition yet evading review." *Ramirez-Ortiz v. Twelfth Dist. Court of Appeals*, 151 Ohio St.3d 46, 2017-Ohio-7816, ¶ 9-14. While it is capable of repetition, it doesn't evade review because this exact same legal question already has been addressed and decided in prior cases bearing precedent for this Court. *State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 128-34 (discussing cases); *see also, e.g.*, *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 133, 136.

**The State Cannot Appeal a Final Criminal Verdict**

{¶ 12} The State cannot appeal final criminal trial verdicts. R.C. 2945.67(A); *Arnett*; *Bistricky.* To the extent the State is appealing the jury's verdict sentencing Golsby to life, the motion must be denied. In the exercise of our discretion, we are not only bound to follow this on state constitutional and legal principles (Ohio Constitution, Article IV, Section 03(B)(2) and R.C. 2945.67), but we must determine if granting or denying leave "promotes substantial justice." *State ex rel. Pressley*, 11 Ohio St.2d at 161.

{¶ 13} Even were the State's appeal construed not to be an appeal of the final verdict itself, which seems a bit of a stretch, since the State argues the jury's verdict was a "failure of justice," allowing an appeal of the abstract legal question about appropriate instructions cannot change the verdict on the mitigation phase of the trial. (Mot. for Leave at 14.) *Arnett*; *Bistricky* at 159. In short, Golsby can't be "redeathed."

**Verdict of Life Regarded by Law as Acquittal**

{¶ 14} A verdict of life without the possibility of parole is regarded as an "acquittal" by the U.S. Supreme Court for purposes of double jeopardy. *Rumsey* at 211; *Bullington* at 445-46. The fact that the appeal being sought would be moot is in fact a legitimate consideration in whether to allow it. The U.S. Supreme Court has held, for example, "[w]hen a successful postacquittal appeal by the prosecution would lead to proceedings that violate the Double Jeopardy Clause, the appeal itself has no proper purpose." *Smalis* at 145. Thus, even granting the State's motion, this Court would be limited to the main issue involved in the State's motion: a jury instruction given by the Franklin County Court of Common Pleas during the penalty phase of defendant Brian Lee Golsby's trial for the kidnapping, rape, and aggravated murder of Reagan Tokes. We should examine that issue now and make our determination of whether the State gets a substantive appeal, based on the import and weight of the substance of the State's motion.

{¶ 15} At the death penalty phase of the trial, the State argued that it was not required to disprove mitigation. It did concede Golsby had to offer mitigation and that the jury, having found Golsby guilty of all counts and associated specifications constituting aggravating circumstances (except those counts and specifications that were severed or for which Golsby had waived jury),[1] the State had the burden to prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors and warranted a death sentence. (Aug. 30, 2017 Memo. Contra Mot. 35 at 1-2.) R.C. 2929.03(D)(1). The State did not argue that Golsby bore any burden of proof. Citing *State v. Rogers*, 17 Ohio St.3d 174 (1985), the State argued that "the burden of proof at the mitigation phase of the trial rests solely upon the State and not Defendant, thereby affording the State the right to open and close arguments to the jury." (Aug. 30, 2017 Memo. Contra Mot. 42 at 2.)

{¶ 16} According to an excerpt of an uncertified transcript attached to the State's motion for leave to appeal, the trial court held a discussion with counsel about jury instructions to be given during the penalty phase of the trial. (Mar. 19, 2018 Uncertified Tr. Excerpt at A-044 to A-047, A-085 to A-086.) During this discussion, the State for the

---

[1] Mar. 13, 2018 Verdict Forms, filed Mar. 14, 2018; Mar. 5, 2018 Waiver; Oct. 2, 2017 Agreed Entry Severing & Renumbering.

first time argued for the express instruction that the defense bore the burden of proving mitigation by a preponderance of the evidence. *Id.* The trial court declined to give this instruction. *Id.*

{¶ 17} Having considered the parties' pretrial and pre-penalty phase motions and oral arguments, the trial court instructed the jury at the penalty phase of the trial in relevant part as follows:

> In order for you to decide that the sentence of death shall be imposed upon Brian Lee Golsby, the State of Ohio must prove beyond a reasonable doubt that the aggravating circumstances of which the Defendant was found guilty are sufficient to outweigh the factors in mitigation of imposing the death sentence. The Defendant has the obligation of going forward with mitigating factors but no burden of proof. The State of Ohio has the burden of proving the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.
>
> * * *
>
> If all twelve of you find that the State of Ohio proved beyond a reasonable doubt that the aggravating circumstances the defendant was guilty of committing are sufficient to outweigh the mitigating factors in this case, then it will be your duty to decide that the sentence of death shall be imposed upon Brian Lee Golsby. If you find that the State of Ohio has failed to prove beyond a reasonable doubt that the aggravating circumstances Brian Lee Golsby was guilty of committing are sufficient to outweigh the mitigating factors present in this case, then it will be your duty to decide which of the following life sentence alternatives should be imposed:
>
> A. the sentence of life imprisonment with no parole eligibility until twenty-five full years of imprisonment have been served;
>
> B. the sentence of life imprisonment with no parole eligibility until thirty full years of imprisonment have been served; or
>
> C. life imprisonment without the possibility of parole.
>
> If the weight of the aggravating circumstances and mitigating factors are equal then you must proceed to consider the life sentence alternatives.
>
> You are not required to unanimously find that the State failed to prove that the aggravating circumstances outweigh the

> mitigating factors before considering one of the life sentence alternatives. You should proceed to consider and choose one of the life sentence alternatives if any one or more of you conclude that the State has failed to prove beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors. One juror may prevent a death penalty determination if the juror concludes that the State has failed to prove that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.
>
> You must be unanimous on one of the life sentence alternatives before you can render that verdict to the court. If you cannot unanimously agree on a specific life sentence, you will then inform the court by written note that you are unable to render a sentencing verdict.

(Mar. 20, 2018 Penalty Phase Jury Instructions at 2, 6-7.)

{¶ 18} On March 21, 2018, the jury reached a unanimous verdict selecting a sentence of "Life Imprisonment without parole." (Mar. 21, 2018 Penalty Phase Verdict Forms.) In relevant part, the signed verdict forms said that the jury was "deadlocked and unable to agree on whether the aggravating circumstances outweigh[ed] the mitigating factors beyond a reasonable doubt" but stated that they therefore "unanimously determine[d] the * * * sentence [of] * * * Life Imprisonment without parole." *Id.* Two other verdict forms were also available to the jury but were not signed by the jurors. One form was for the jury to indicate that it had unanimously determined that the aggravating circumstances outweighed the mitigating factors and that it recommended a sentence of death. (Blank Verdict Form, Unanimous Death.)[2] The other was for the jury to indicate that it had unanimously determined that the aggravating circumstances did not outweigh the mitigating factors and then to set forth its selection of one of three terms of life imprisonment: 25-life, 30-life, and life without parole. (Blank Verdict Form, Unanimous Death Rejection.) No form was provided for the jury to indicate unanimous agreement that the aggravating circumstances and any mitigating factors were equal.

{¶ 19} The jury found that Golsby's sentence should be life imprisonment without the possibility of parole and did not recommend the death sentence. (Apr. 6, 2018 Jgmt.

---

[2] The unsigned verdict forms should have been part of the record in this case and some of them were able to be located in paper form. For reasons unclear, they were not filed electronically.

Entry at 4-5.)[3]  Three days later, on April 6, 2018, the trial court followed the jury-sentencing verdict and sentenced Golsby to the maximum legal sentence, life in prison without the possibility of parole plus 105 years.  (Apr. 6, 2018 Jgmt. Entry at 7.)

{¶ 20} Golsby filed a notice of appeal on May 4, 2018.  (May 4, 2018 Golsby Notice of Appeal.)  Three days later, the State filed a notice of appeal together with a motion for leave to cross-appeal that included excerpts of the record "to show the probability that the errors claimed did in fact occur."  App.R. 5(C); May 7, 2018 Mot. for Leave; May 7, 2018 Notice of Cross-Appeal.  Approximately four weeks later, Golsby moved to voluntarily dismiss his appeal and this Court granted the dismissal.  (May 31, 2018 Golsby Mot. to Dismiss; June 4, 2018 Dismissal Entry.)  Golsby also responded in opposition to the State's motion for leave.  (June 4, 2018 Memo. in Opp.)

{¶ 21} Notwithstanding Golsby's decision not to move forward with an appeal, the State requests that we accept jurisdiction and grant leave to appeal in order to resolve a single proposed assignment of error:

> THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN THE PENALTY PHASE WHEN IT REFUSED TO INSTRUCT THE JURY ON DEFENDANT'S PREPONDERANCE BURDEN AND INSTEAD INSTRUCTED THE JURY THAT DEFENDANT BORE NO BURDEN OF PROOF.

{¶ 22} "Although R.C. 2505.03 generally provides that every final order or judgment may be reviewed on appeal, appeals by the State in criminal proceedings are specifically governed by R.C. 2945.67(A)."  *State v. Holzapfel*, 10th Dist. No. 10AP-17, 2010-Ohio-2856, ¶ 6, citing *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, ¶ 30.  The majority looks to the language in R.C. 2945.67(A) relating to "any other decision" to provide the State with the right to appeal.  However, R.C. 2945.67(A) also prohibits the appeal of "*the final verdict* [] of the trial court in a criminal case."  (Emphasis added.)

{¶ 23} The Supreme Court of Ohio has held that the "key word" to consider in "final verdict" is the word "verdict."  *State v. Lomax*, 96 Ohio St.3d 318, 2002-Ohio-4453,

---

[3] The same day the jury rendered its penalty verdict, the trial court separately found Golsby guilty of having a weapon while under a disability and also found that Golsby was a sexually violent predator, was a repeat violent offender, and had kidnapped with sexual motivation.  A short time later, Golsby pled guilty to the 6 remaining aggravated robberies in exchange for an agreement to dismiss the 2 additional kidnapping

¶ 23.  Making reference to Black's Law Dictionary, the Supreme Court defines "verdict" in relevant part as " '[a] jury's finding or decision on the factual issues of a case.' "  *Id.*, quoting *Black's Law Dictionary* 1554 (7th Ed.1999).

{¶ 24} In Golsby's case, the jury was instructed:

> You must be unanimous on one of the life sentence alternatives before you can render that verdict to the court.  If you cannot unanimously agree on a specific life sentence, you will then inform the court by written note that you are unable to render a sentencing verdict.

(Mar. 20, 2018 Penalty Phase Jury Instructions at 7.)  A jury is presumed to follow the trial court's instructions.  *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 39.  Here, the jury did not "inform the court by written note that [it was] unable to render a sentencing verdict" but instead "unanimously determine[d]" that Golsby's crimes merited a sentence of "Life Imprisonment without parole."  (Mar. 21, 2018 Signed Verdict Form; Mar. 20, 2018 Penalty Phase Jury Instructions at 7.)  Although the signed verdict form indicated that the jury had not reached unanimity on the question of whether the aggravating factors outweighed the mitigating factors, by determining Golsby's sentence should be life without parole rather than any of the lesser forms of a life sentence, it *did* reach a unanimous "finding or decision on the factual issues of a case." *Lomax* at ¶ 23.

{¶ 25} Because the unanimous jury verdict of life without parole was a "final verdict" within the meaning of R.C. 2945.67(A), the State may not directly appeal it.  To the extent the State argues that the jury's verdict of life imprisonment without parole in this case was a "failure of justice," the appeal cannot go forward.  (May 7, 2018 Mot. for Leave at 14.)  However, the Supreme Court has recognized, within the limits of double jeopardy and mootness, that the "court of appeals has discretionary authority pursuant to R.C. 2945.67(A) to decide whether to review substantive law rulings made in a criminal case which results in a judgment of acquittal so long as the verdict itself is not appealed." *Bistricky*, 51 Ohio St.3d at 160.  Assuming arguendo the State's argument of erroneous jury instructions meets this exception, there is a necessary consideration of whether

---

charges and a recommendation of 60 consecutive years on the 6 aggravated robbery counts.  (Apr. 3, 2018 Guilty Plea Form.)

double jeopardy intercedes to render the question moot.[4]  In *Sattazahn v. Pennsylvania*, the U.S. Supreme Court explained "it is not the mere imposition of a life sentence that raises a double-jeopardy bar," it is that "a sentence of life imprisonment signifies that the jury has already acquitted the defendant of whatever was necessary to impose the death sentence," and, therefore, "the Double Jeopardy Clause bars a State from seeking the death penalty on retrial."  (Internal quotation marks & citations omitted.) *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106 (2003).

{¶ 26} The jury unanimously recommended life in prison without parole, but the jury did not sign the form unanimously rejecting death.  Based on this, the State posits that the jury's verdict was not one to which jeopardy attaches and that a second effort may be made to obtain a death sentence against Golsby.  In other words, the State argues that double jeopardy does not prevent retrying Golsby for a death sentence because the jury signed a form signaling that its members were "deadlocked" on whether to impose death and did not sign a form in which they would have unanimously rejected death.  (May 7, 2018 Mot. for Leave at 11.) C*ompare* Blank Verdict Form, Unanimous Death Rejection (for indicating that the jury had "unanimously determined that the aggravating circumstances do not outweigh the mitigating factors") *with* Mar. 21, 2018 Signed Verdict Form (indicating that the jury had "deadlocked and [was] unable to agree on whether the aggravating circumstances outweigh[ed] the mitigating factors").

{¶ 27} The State's interpretation of the jury verdict is at odds with the instructions the trial court gave to the jury and which the jury is by law presumed to have followed:

> You are not required to unanimously find that the State failed to prove that the aggravating circumstances outweigh the mitigating factors before considering one of the life sentence alternatives.  You should proceed to consider and choose one of the life sentence alternatives if any one or more of you conclude that the State has failed to prove beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors.

---

[4] Double jeopardy attaches to a decision rendered after the adjudication phase of a trial when a jury or other factfinder unanimously finds that a defendant should be sentenced to life in prison rather than put to death; it is regarded as legally equivalent to an acquittal under a double jeopardy analysis. *Rumsey*, 467 U.S. 203, at 211; *Bullington*, 451 U.S. 430, at 445-46; *see also Sattazahn v. Pennsylvania*, 537 U.S. 101, 106-09 (2003).  The State seeks leave to appeal, arguing that the jury verdict in this case did not constitute an actual verdict of life but, rather, that the jury verdict emanated from a hung jury forced by legal default to recommend a life sentence.  (May 7, 2018 Mot. for Leave at 11.)

(Mar. 20, 2018 Penalty Phase Jury Instructions at 6.)   In our review, we must presume that the jury followed the trial court's instructions.   *Noling* at ¶ 39.   Having been instructed that the jurors were "not required to unanimously find that the State failed to prove that the aggravating circumstances outweigh the mitigating factors," the jurors did not need to use the blank verdict form that contained the finding that they had "unanimously determined that the aggravating circumstances do not outweigh the mitigating factors."   *Compare* Mar. 20, 2018 Penalty Phase Jury Instructions at 6 *with* Blank Verdict Form, Unanimous Death Rejection.   In short, we may not impact the effect of the jury's sentencing verdict in Golsby's death penalty trial, because the jury may have used the "deadlocked" form as a means to follow the trial court's instruction that it was "not required to unanimously find that the State failed to prove that the aggravating circumstances outweigh the mitigating factors."   (Mar. 20, 2018 Penalty Phase Jury Instructions at 6.)

{¶ 28} The trial court also instructed the jury that "[i]f the weight of the aggravating circumstances and mitigating factors are equal then you must proceed to consider the life sentence alternatives." (Mar. 20, 2018 Penalty Phase Jury Instructions at 6.)  The jury was not provided a verdict form for indicating a finding of equal weight, even though it is possible the jury could have found this.   That the jury selected the "deadlocked" form does not mean that it did *not* unanimously reject death.

{¶ 29} The jury was instructed to examine and weigh the evidence and that the State bore the burden to prove aggravating factors outweighed mitigating circumstances beyond a reasonable doubt.  If the jury had found the weight of the evidence supporting aggravating and mitigating circumstances to be equal, the lack of a jury form to indicate that finding, hampered its means to express it.  That the jurors did not use the form indicating a unanimous rejection of death is still in keeping with the trial court's instructions, especially in the absence of a form to indicate a unanimous finding of equal weight to aggravating circumstances and mitigating factors.

{¶ 30} The jury instruction the State agreed to was that "if any one or more of you conclude that the State has failed to prove beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors," the jury "should proceed to consider and choose one of the life sentence alternatives."   (Mar. 20, 2018 Penalty Phase Jury

Instructions at 6.)  Under these instructions, we cannot interpret the verdict form the jurors signed as support for any definitive statement that the jury was unable to unanimously reject death.  The jury's verdict shows consistency with the trial court's instructions, and this is so even if the jury unanimously agreed that the weight of the evidence was equal in support of the aggravating factors and mitigating circumstances.

{¶ 31} Other courts have assigned a presumption when a jury "unanimously determine[s]" to recommend the sentence of life.  (Mar. 21, 2018 Signed Verdict Form.)  In *Bullington*, a Missouri jury in a death penalty case returned a sentence of life.  It had been instructed that its decision to impose death had to be unanimous, and if it was unable to unanimously impose death, the defendant would receive an alternative sentence of life imprisonment.  *Bullington*, 451 U.S. 430, at 435.  In *Bullington,* there was no indication in the record the jury first unanimously rejected death before finding appropriate a life sentence.  When Bullington obtained a new trial on grounds unrelated to sentence, the U.S. Supreme Court held that although Bullington obtained a new trial, the State could not seek the death penalty against him in the retrial.  *Id.* at 435-36, 446.  This holding supports the proposition, even though the jurors did not unanimously reject death, the life verdict acted as an acquittal for purposes of double jeopardy.  Relying on this precedent, we should apply the same presumption in Golsby's case, finding the State's appeal inapposite because of double jeopardy.

**The Legal Viability of the Jury Instructions Sought to Be Appealed Has Not Evaded Review**

{¶ 32} Thus, assuming arguendo the State's appeal is not an impermissible appeal of the verdict negating the death penalty for Golsby, under the majority's "capable of repetition yet evading review" analysis in its application of *Bistricky* and *State v. Ross*, 128 Ohio St.3d 283, 2010-Ohio-6282, ¶ 32-33, the question about the jury instructions does not evade review because this same legal question has been addressed and decided before in other cases.  *Teitelbaum*, 2016-Ohio-3524, at ¶ 128-34 (in which the State on cross-appeal argued error in jury instruction relating to the defendant's burden of proof in the mitigation phase of a death penalty trial); *see also, e.g., Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, at ¶ 133, 136 (finding that the trial court's instructions properly conveyed the State's burden of proof, and the requested instruction was therefore covered by the general charge).

{¶ 33} The State's arguments in favor of its direct appeal do not support exercising our discretion in favor of jurisdiction under R.C. 2945.67. We must consider the State's arguments in support of its motion at this juncture. Based on review of the settled law in this area, I would find that this issue is one already decided and does not evade review. Despite the verdict form composition, this case is no different from any other case in which a jury unanimously recommends life without first unanimously rejecting death. The verdict of life imprisonment without the possibility of parole was a final verdict to which jeopardy attached and this, in itself, taken with settled law, eliminates the need for any further review on a substantive appeal. As a result, Golsby cannot be again placed in jeopardy of death. For these reasons, I cannot countenance how we can invoke our jurisdiction to permit the State to appeal, and I respectfully dissent.

_____